1999 ME 7

**DEPARTMENT OF TRANSPORTATION**

v.

**MAINE STATE EMPLOYEES
ASSOCIATION, SEIU
LOCAL 1989.**

Supreme Judicial Court of Maine.

Argued Nov. 30, 1998.
Decided Jan. 6, 1999.

Peter H. Stewart (orally), Bureau of Employee Relations, Augusta, for plaintiff.

Timothy L. Belcher (orally), Service Employees International Union, Augusta, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] The Department of Transportation ("DOT") appeals from a judgment of the Superior Court (Kennebec County, *Alexander, J.*) denying its motion to vacate an arbitration award concerning a dispute between DOT and the Maine State Employees Association ("MSEA"), representing William Wasson. We conclude that the arbitrator erred as a matter of law and exceeded his authority in determining that Wasson was a state employee. We vacate the judgment.

[¶ 2] The underlying facts may be briefly summarized as follows: The Maine Ferry Service, a division of DOT, experienced an increased demand for service in the late 1980s. DOT unsuccessfully requested authorization for additional employee positions for the Ferry Service from the Legislature. Because it was left without legal authority to hire additional State employees, the Ferry Service contracted with independent contractors to staff an additional ferry to serve the Rockland to Vinalhaven route. The ferry began operation on an as-needed basis in the early 1990s. The independent contractors staffing the ferry were paid from fare revenues rather than from the State's general fund.

[¶ 3] William Wasson was engaged by the Ferry Service as an independent contractor and able-bodied seaman in August of 1991. The following year, he became a Ferry Captain and signed a "Contract for Special Services" that remained in effect until June of 1995. The contract specified that Wasson was an independent contractor, would not have state or federal income taxes deducted from his pay, would not obtain the benefits available to state employees, and would work when called upon by the Ferry Service. By the summer of 1994, Wasson was working alternating weeks on the Rockland to Vinalhaven route. In September of that year, Wasson was informed of a schedule change and he was asked to work one week on, two weeks off. Wasson objected on the basis that the schedule change would result in a loss of income to him. In addition to working fewer hours as a Ferry Captain, Wasson stated that he would be forced to cancel his independent employment as a hunting guide because of conflicts with the new schedule.

[¶ 4] In the spring of 1995, the Legislature created additional employment positions for the Ferry Service, and in September of 1995, Wasson accepted one of these positions as a state employee. Wasson has subsequently been terminated from that position. The present dispute, however, concerns only his objection to the schedule changes that occurred while he was engaged as an independent contractor in September of 1994.

[¶ 5] MSEA filed a grievance on Wasson's behalf in October of 1994, alleging that despite the contractual basis for his services, Wasson was a state employee and a member of the Supervisory Services collective bargaining unit and thus entitled to the protection of the collective bargaining agreement with the State. The collective bargaining agreement prohibits a supervisor from altering an employee's schedule without providing fourteen days notice and attempting to mitigate the adverse effects on the employee to the extent practicable.

[¶ 6] Pursuant to the grievance procedure established in the collective bargaining agreement, the Department of Transportation, followed by the State Bureau of Employee Relations, determined that Wasson was not a state employee and therefore not eligible to file a grievance. Thereafter, the dispute was submitted to the arbitrator. In October of 1997, the arbitrator issued a decision asserting that he had jurisdiction over the matter and holding that Wasson was a state employee and a member of the Supervisory Services collective bargaining unit. The arbitrator concluded that DOT had violated Wasson's rights under the collective bargaining agreement by failing to provide him with fourteen days notification of the schedule change and to mitigate harm to the extent possible. The arbitrator ordered DOT to reimburse Wasson for the amount of time he

would have worked within the fourteen day notice period as well as for the hunting guide employment he lost. Pursuant to 14 M.R.S.A. § 5938 (1980),[1] DOT filed a motion in the Superior Court to vacate the award, arguing that the arbitrator exceeded his powers and that the award violated public policy. The court denied DOT's motion and confirmed the arbitrator's award. This appeal followed.

■■■■ [¶ 7] When we consider the appeal of an arbitrator's award, we review the decision of the Superior Court for errors of law. *See Westbrook Sch. Comm. v. Westbrook Teachers Ass'n*, 404 A.2d 204, 206 n. 3 (Me. 1979). We will uphold the Superior Court's confirmation of an arbitration award unless the court was compelled to vacate the award. *See American Fed'n of State, County, and Mun. Employees, Council 93 v. City of Portland*, 675 A.2d 100, 102 (Me.1996). An arbitrator's award will be overturned, however, when he exceeds his powers by contravening public policy. *See Department of Transp. v. Maine State Employees Ass'n, SEIU Local 1989*, 606 A.2d 775, 777 (Me.1992).

■■■■ [¶ 8] Under the terms of the collective bargaining agreement, if applicable, the arbitrator has authority to decide a grievance, defined as "a dispute concerning the interpretation or application of the terms or provisions of this Agreement." Regardless of the authority given to the arbitrator under the collective bargaining agreement, however, such authority does not vest unless Wasson is included within the group of persons who are subject to the collective bargaining agreement. This case does not present the issue whether a lawfully appointed state employee is included within the definition of the bargaining unit. Rather, the issue is whether an arbitrator has the authority to ignore the foundational requirement that the grievant be a duly-appointed employee of the State. We conclude that, as a matter of law, Wasson is not a state employee and, therefore, is not a member of the bargaining unit. The authority of the arbitrator under the collective bargaining agreement is inapplicable to disputes arising under Wasson's independent service contract.

[¶ 9] The arbitrator reasoned that even though "Wasson was not hired pursuant to Civil Service procedures, and did not hold a legislatively authorized permanent position," he could still be a member of the collective bargaining unit. The arbitrator noted that the collective bargaining agreement mirrored the State Employees Labor Relations Act's definition of "state employee," defining the term as "any employee of the State of Maine," excepting temporary, seasonal, and on-call employees. 26 M.R.S.A. § 979–A(6) (1988 & Supp.1998).[2]

---

1. The statute reads in pertinent part:
   **1. Vacating award.** Upon application of a party, the court shall vacate an award where:
   **A.** The award was procured by corruption, fraud or other undue means;
   **B.** There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
   **C.** The arbitrators exceeded their powers;
   **D.** The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 5931, as to prejudice substantially the rights of a party;
   **E.** There was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection; or
   **F.** The award was not made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court has ordered, and the party has not waived the objection.
   14 M.R.S.A. § 5938(1) (1980).

2. That provision of the State Employees Labor Relations Act reads in full:
   "State employee" means any employee of the State of Maine performing services within the executive department except any person:
   **A.** Elected by popular vote; or
   **B.** Appointed to office pursuant to statute, ordinance or resolution for a specified term by the Governor or a department head or body having appointive power within the executive department; or
   **C.** Whose duties necessarily imply a confidential relationship with respect to matters subject to collective bargaining as between such person and the Governor, a department head, body having appointive power within the executive department or any other official or employee excepted by this section; or
   **D.** Who is a department or division head appointed to office pursuant to statute, ordi-

[¶ 10] Beyond the matter of definition, the arbitrator reasoned that the collective bargaining agreement mirrored the treatment of intermittent employees under the Maine civil service system and concluded that Wasson was an intermittent employee and covered by the collective bargaining agreement. Under the agreement, "intermittent employees" are defined as "*employees* who are appointed for a period of time on a sporadic basis and who work not more than 500 hours in any consecutive twelve (12) month period beginning with the date of hire or anniversary of date of hire." (Emphasis added). The agreement goes on to state:

Any employee designated as intermittent, who works in excess of the limits set out above and who works more than 1,040 regularly scheduled hours during the period since appointment as an intermittent employee without a break in service due to resignation or dismissal shall be covered by the terms of this Agreement.

The arbitrator concluded that "after completing the statutorily-mandated probationary period, the intermittent employee is a member of the bargaining unit entitled to all contractual rights and protections."

[¶ 11] The arbitrator erred as a matter of law and exceeded his powers in determining that Wasson was a state employee covered by the collective bargaining agreement. The arbitrator's interpretation of the collective bargaining agreement violated Maine's personnel and civil service laws. The Maine civil service law, 5 M.R.S.A.

§§ 7031–7085 (1989 & Supp.1998), defines an "employee" as "any person holding a *position* subject to appointment by an appointing authority." *See* 5 M.R.S.A. § 7032(6) (1989) (emphasis added). Throughout, the statute emphasizes the fact that a state employee is a person who occupies a legislatively-authorized position. The statute sets forth a process for the Bureau of Human Resources to implement, administer, monitor, and improve the civil service system. 5 M.R.S.A. §§ 7033–7042 (1989 & Supp.1998). The procedure for appointing state employees is strictly prescribed:

Appointments to and promotions in the classified service shall be made according to merit and fitness, from eligible lists developed by the director pursuant to procedures and policies established by the director and the Policy Review Board. No person may be appointed, transferred, promoted or reduced as an officer, clerk or employee or laborer in the classified service in any manner or by any means other than those prescribed by law or rule pursuant to this chapter.

5 M.R.S.A. § 7052 (1989). Although the civil service system includes a provision for intermittent employees, such employees are confined to those who hold a "*position* [of] employment for not more than 1040 hours in any consecutive 12–month period," and they are eligible for certain benefits only after having worked more than 1040 hours in total. 5 M.R.S.A. § 7053(1) (Supp.1998) (emphasis added).[3]

nance or resolution for an unspecified term by the Governor or by a body having appointive power within the executive department; or

**E.** Who has been employed less than 6 months; or

**F.** Who is a temporary, seasonal or on-call employee; or

**G.** Who is serving as a member of the State Militia or National Guard; or

**H.** Who is a staff attorney, assistant attorney general or deputy attorney general in the Department of Attorney General; or

**I.** Who is appointed to a major policy-influencing position as designated by Title 5, chapter 71; or

**J.** Who substantially participates in the formulation and effectuation of policy in a department or agency or has a major role, other than a typically supervisory role, in the

administration of a collective bargaining agreement in a department or agency; or

**K.** Who is a prisoner employed by a public employer during the prisoner's term of imprisonment, except for prisoners who are in work release or intensive supervision programs.

26 M.R.S.A. § 979–A(6) (1988 & Supp.1998).

**3.** Section 7053 reads in pertinent part:

It is the policy of the State to permit all employees of the State to participate to the fullest extent possible in the benefits of the civil service system for classified and unclassified employees. This policy shall be extended to full-time, part-time, intermittent and all other categories of employees.

The Director of Human Resources shall ... adopt rules to assure the attainment of this policy

[¶ 12] The arbitrator's classification of Wasson as an "intermittent employee" was an error of law. First, "intermittent employees" are *employees,* occupying *positions* within the civil service system. Wasson did not occupy such a position. Second, even if the definition of "intermittent employee" were to apply to Wasson, he does not qualify. The statutory definition is confined to those who work a maximum of 1040 hours per twelve month period. Pursuant to his independent service contract, Wasson worked 1684 hours in 1993 and 1782 hours in 1994.

[¶ 13] The legislative history of section 7053 reveals that its purpose is to protect intermittent employees and provide them with benefits roughly proportional to full-time state employees. Nevertheless, an "intermittent employee" is not merely any person performing services for the state, but rather a state employee. *See* Legis. Rec. 686 (1978). Section 7053 delegates to the Bureau of Human Resources the authority to approve the creation of limited intermittent positions and extends limited benefits and rights to those employees. Wasson's contract did not result from such a process.

[¶ 14] In sharp contrast to an intermittent employee, Wasson was an independent contractor for the Ferry Service. He did not fill a legislatively-authorized employee position, and he did not qualify as an intermittent employee. Instead, he provided special services as an independent contractor, and signed a contract stating just that. Wasson's independent and irregular status is underscored further by the fact that he was paid directly out of Ferry Service revenues rather than legislatively-authorized payments from the general fund. It is irrelevant that Wasson might, under other provisions of law, be considered an employee, for example, for purposes of income taxation, worker's compensation, or the vicarious liability of the state. In this instance, the arbitrator erred in determining that Wasson was a state employee.[4] The arbitrator has no authority, explicit or implied, statutory or contractual, to substitute the "control test" of the common law for the personnel laws of Maine. *See Department of Transp. v. Maine State Employees Ass'n, SEIU Local 1989,* 606 A.2d 775, 777 (Me.1992) ("An arbitrator exceeds his power when the award contravenes public policy requiring conduct 'beyond that to which [a] public employer may bind itself or

---

for intermittent employees. At a minimum, the rules must:
  1. **Define intermittent positions.** Define intermittent positions and must in the definition limit the use of any position to employment for not more than 1040 hours in any consecutive 12–month period;
  2. **Eligibility provisions.** Provide that a person who has been employed in an intermittent position for more than 1,040 hours shall:
    A. Be eligible to accrue and use vacation and sick leave days at the same rate, pro rata, as full-time state employees;
    B. Be eligible to receive holiday pay at the same rate, pro rata, ... as full-time state employees, provided that the intermittent employee works on the days before and after the holiday;
    C. Be eligible to receive an increase in salary to the next step on the same basis as full-time employees, that is, after completing 2,080 hours of work;
    D. Be considered a classified employee for the purposes of:
      (1) Eligible registers;
      (2) Classification of positions;
      (3) The compensation plan;
      (4) Promotion in the classified service;
      (5) Provisional, emergency, exceptional and temporary appointments;
      (6) Probationary period;
      (7) Transfer;
      (8) Reinstatement;
      (9) Demotion;
      (10) Suspension, layoff and dismissal;
      (11) Leave of absence and resignation;
      (12) Personnel records;
      (13) In-service training;
      (14) Service ratings; and
      (15) Certification of payrolls;
    E. Be eligible to participate on a pro rata basis in the retirement program for state employees; and
    F. Be eligible to participate in health and hospitalization insurance programs at rates of participation reduced to reflect the less than full-time status ....

5 M.R.S.A. § 7053 (1989 & Supp.1998).

4. The arbitrator noted that he would have reached the same conclusion whether he considered Wasson to be a seasonal, part-time, or intermittent employee. Our conclusion that the arbitrator's award violated public policy does not turn on his subsequent assumption that Wasson was an intermittent employee, because Wasson was not a state employee of any kind, whether it be seasonal, part-time, or intermittent.

allow itself to be bound.' " (citation omitted)). Wasson was not a state employee. Only the Legislature can confer the benefits of state employment on persons in his circumstances. Thus, the Superior Court erred in confirming the arbitrator's award.

The entry is:

Judgment vacated. Remanded to Superior Court for entry of a judgment vacating the arbitrator's award.