2000 ME 51

DEPARTMENT OF CORRECTIONS

v.

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 93.

Supreme Judicial Court of Maine.

Argued Dec. 6, 1999.

Decided March 23, 2000.

Sandra S. Carraher (orally), Bureau of Employee Relations, Augusta, for plaintiff.

Stephen P. Sunenblick (orally), Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] The Department of Corrections (DOC) appeals from the judgment entered in the Superior Court (Kennebec County, *Studstrup, J.*) denying its motion to vacate an arbitration award in favor of the American Federation of State, County and Municipal Employees, Council 93 (AFSCME). The award reinstated the overtime policy that existed prior to 1996 for correctional officers at the Maine Correctional Center. The DOC contends that the arbitrator exceeded his powers pursuant to 14 M.R.S.A. § 5938(C) by irrationally construing the relevant provisions of the Institutional Services Unit collective bargaining agreement and rendering an award that violated public policy.[1] We disagree and affirm the judgment.

[¶ 2] The facts are undisputed. The DOC operates several correctional facilities throughout Maine, including the Maine Correctional Center (MCC) in Windham where this dispute arose. Three classifications of correctional officers work at the MCC. Correctional Officers I and II are represented by AFSCME. Correctional Officers III are represented by the Maine State Employees Association, Local 1989 SEIU, AFL–CIO, CLC.

[¶ 3] In 1991, AFSCME and the DOC mutually agreed to modify the existing overtime policy for correctional officers at the MCC. Pursuant to the modified policy, the DOC maintained an overtime list

---

1. The pertinent portions of section 5938 provide:

    **1. Vacating Award.** Upon application of a party, the court shall vacate an award where:

    . . . .

    **C.** The arbitrators exceeded their powers.

14 M.R.S.A. § 5938 (1980).

for Correctional Officers I and II. When a Correctional Officer I was absent, a replacement from the Correctional Officer I overtime list would be called to work at an overtime rate. When a Correctional Officer II was absent, a replacement from the Correctional Officer II list would be called to work at an overtime rate.

[¶ 4] In 1996, the DOC experienced staff reductions and modified the overtime policy without consulting or negotiating with AFSCME. Pursuant to the new policy, the DOC no longer automatically called a Correctional Officer II to work at an overtime rate for an absent Correctional Officer II. Instead, as long as sufficient supervisory personnel (i.e., Correctional Officers II and III) were on duty, an on-duty Correctional Officer III was assigned some of the work of the absent Correctional Officer II.

[¶ 5] As a result of the new policy, Correctional Officers II experienced a substantial decrease in overtime opportunities. The new policy also increased the responsibilities but not the compensation of Correctional Officers III; prior to 1996 a Correctional Officer III would not be assigned the duties of a Correctional Officer II unless there was an emergency.

[¶ 6] AFSCME filed a class action grievance on behalf of Correctional Officers II. The grievance could not be resolved and came before an arbitrator on December 15, 1998. The arbitrator found that the DOC violated the Institutional Services Unit collective bargaining agreement (Agreement) by assigning an on-duty Correctional Officer III to fill in for an absent Correctional Officer II rather than calling a Correctional Officer II for overtime. Accordingly, on January 15, 1999, the arbitrator directed the DOC to cease assigning Correctional Officers III to fill Correctional Officer II vacancies and to reinstate the overtime practice that existed prior to 1996. The DOC received notice of the arbitrator's award on January 21, 1999.

[¶ 7] The DOC filed a motion in the Superior Court (Kennebec County, Studstrup, J.) on April 20, 1999, to vacate the arbitration award. AFSCME filed a motion to confirm the arbitration award on May 11, 1999. AFSCME's motion also included a request for costs and reasonable attorney fees. Following a hearing on the motions, the Superior Court found that although the DOC's construction of the contract was reasonable and possibly correct, the arbitrator's construction was also a fair interpretation of the contract. Accordingly, on June 8, 1999, the Superior Court denied the DOC's motion to vacate the arbitration award and remanded to the arbitrator for any requested clarification. The DOC then appealed to this Court.

[¶ 8] When considering the appeal of an arbitrator's award, we review the decision of the Superior Court for errors of law. *See Department of Transp. v. Maine State Employees Ass'n, SEIU Local 1989*, 1999 ME 7, ¶ 7, 727 A.2d 896, 898. We will uphold the Superior Court's confirmation of an arbitration award unless the court was compelled to vacate the award. *See id.*

[¶ 9] The standard for determining whether an award exceeds an arbitrator's power is an extremely narrow one. *See American Fed'n of State, County, and Mun. Employees, Council 93 v. City of Portland*, 675 A.2d 100, 102 (Me.1996). A court will uphold an arbitrator's award if *any* rational construction of the agreement *could* support the award. *See id.* (emphasis added). "[A]n arbitrator does not exceed his authority if the arbitrator's interpretation, *even if erroneous*, nevertheless was rationally derived from the agreement." *Id.* (emphasis added). "[T]he arbitrator's interpretation of the agreement is entitled to a high degree of judicial deference," *Cape Elizabeth Sch. Bd. v. Cape Elizabeth Teachers Ass'n*, 459 A.2d 166, 174 (Me.1983), and the agreement must be broadly construed, with all doubts generally resolved in favor of the arbitrator's authority, *see American Fed'n of State, County, and Mun. Employees,*

*Council 93*, 675 A.2d at 102. Strong policy reasons favor this deference to arbitration awards: the fact that the parties bargained for the arbitrator's construction of the agreement, the complexity of labor relations, the expertise of the arbitrator, and the need for finality of awards. *See Cape Elizabeth Sch. Bd.*, 459 A.2d at 174; *Westbrook Sch. Comm. v. Westbrook Teachers Ass'n*, 404 A.2d 204, 208 (Me. 1979).

[¶ 10] Despite the broad principles of deference, "[a]n arbitrator does not have unfettered discretion and may not fashion a remedy that directly contradicts the language of the agreement." *American Fed'n of State, County, and Mun. Employees, Council 93*, 675 A.2d at 102. "[I]f all fair and reasonable minds would agree that the construction of the contract made by the arbitrator[ ] was not possible under a fair interpretation of the contract," then we must vacate the award. *Westbrook Sch. Comm.*, 404 A.2d at 209.

[¶ 11] In the present case, a rational construction of the Agreement supports the arbitrator's award. Article 33 of the Agreement provides in pertinent part that "[p]olicies for ensuring equal distribution of overtime shall be agreed upon between the parties on an institution by institution basis. Current overtime practices will continue *until there is an agreement between the parties.*" (Emphasis added.) Pursuant to Article 33, the DOC cannot modify the "current overtime practices" without AFSCME's consent. The DOC argues that the 1996 modifications do not change the "current overtime practice" pursuant to Article 33. Rather, according to the DOC, the 1996 modifications relate to the *authorization* of overtime in the first instance, while Article 33 only covers the *distribution* of overtime after it is authorized. The DOC contends that unless overtime is *authorized*, there can be no overtime to *distribute* pursuant to Article 33. Because the pre–1996 overtime policy related to overtime distribution by establishing the types of officers eligible

for overtime and the order in which those officers would be called in for overtime work, a rational mind could conclude that the pre–1996 policy was a "current overtime practice" pursuant to Article 33. Moreover, the DOC has not argued that the pre–1996 policy was not a "current overtime practice."

[¶ 12] Prior to 1996, the DOC "authorized" overtime in *every* instance where a Correctional Officer I or II was absent from work. The arbitrator found that the practice of always replacing an absent Correctional Officer II with another Correctional Officer II on overtime was an "overtime practice" that could not be changed absent "agreement of the parties." As the Superior Court indicated, although this interpretation of the parties' agreement may be wrong, it is at least rational.

[¶ 13] The DOC's argument on appeal, however, really begins and ends with the language of Article 29 of the Agreement. Article 29, the Management Rights provisions, provides:

> The Union agrees that the State has and will continue to have the sole and exclusive right to manage its operations and retains all management rights, whether exercised or not, *unless specifically abridged, modified, or delegated by the provisions of this Agreement.* Such rights include but are not limited to ... determin[ing] the size and composition of the work force.

(Agreement Article 29) (emphasis added). The DOC contends that the broad management provisions of Article 29 grant them the exclusive right to make determinations about the work force, including the overtime modifications at issue. The exclusive rights provided by Article 29, however, are limited to those not specifically "abridged, modified, or delegated by the provisions of [the] Agreement." Because Article 33 requires agreement between the parties before a change in the "current overtime practice," Article 33 "abridges, modifies, or delegates" the DOC's right to otherwise

solely determine the size and composition of the work force if such a change would affect the "current overtime practice." As discussed, *supra*, a fair and reasonable mind could conclude that the 1996 modifications changed the "current overtime practice" that existed prior to 1996. Accordingly, a rational construction of the Agreement could find Article 29 inapplicable while finding Article 33 controlling. Such a reading fully supports the arbitrator's award.

[¶ 14] We next consider the DOC's contention that the arbitrator's award violated public policy. We have recently stated that an arbitrator's award will be vacated if the arbitrator exceeds his powers by contravening public policy. *See Maine State Employees Ass'n, SEIU Local 1989*, 1999 ME 7, ¶ 7, 727 A.2d at 898. An arbitrator's award violates public policy if it requires conduct "beyond that to which [a] public employer may bind itself or allow itself to be bound." *Department of Transp. v. Maine State Employees Ass'n, SEIU Local 1989*, 606 A.2d 775, 777 (Me. 1992) (quoting *Local 589, Amalgamated Transit Union v. Massachusetts Bay Transp. Auth.*, 392 Mass. 407, 467 N.E.2d 87, 91 (1984)). The public policy violated by the award, however, must be affirmatively expressed or defined in the laws of Maine. *See American Fed'n of State, County, and Mun. Employees, Council 93*, 675 A.2d at 103 (Me.1996) (citing *Maine State Employees Ass'n, SEIU Local 1989*, 606 A.2d at 777).

[¶ 15] The DOC does not cite any statutory or case law violated by the arbitrator's award. As AFSCME correctly asserts, the arbitrator's award merely reinstates the DOC's own past practice on overtime. Accordingly, the arbitrator's award does not require the DOC to engage in any conduct beyond that to which it may bind itself or allow itself to be bound. *See Maine State Employees Ass'n, SEIU Local 1989*, 606 A.2d at 777 (citation omitted).

The entry is:

Judgment affirmed.