STATE OF MAINE
YORK, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-187
GAB-YOR-10/20/2000

HARVEY BARR,

    Grievant

    v.

DECISION AND ORDER

YORK COUNTY SHERIFF'S
DEPARTMENT,

    Respondent

DONAL... ...T
LAW...

OCT 24 2000

## BACKGROUND

This case involves the discharge of Sergeant Harvey Barr from the York County Sheriff's Department (the "Department") stemming from Barr's absences from work and the Department's dissatisfaction with the medical documentation produced. Barr's absences commenced in January 1998, when he was out for four days due to illness. Barr was also out of work due to illness on February 9 and 10, 1998. Thereafter Barr was out of work pursuant to a note from Dr. Gagnon dated February 13, 1998. The note stated that Barr would not be able to return to work for two weeks due to situational anxiety. Chief Deputy Woodsome wrote a letter to Barr on February 17, 1998, requesting a doctor's certification that included a diagnosis of Barr's illness, the date it commenced, the likely duration of the illness, the nature of the treatment Barr would be undergoing and whether Barr would be "able to perform the functions of his employment." The letter also stated that the certification must be provided and reviewed before Barr returned to work. Barr did

not submit the information requested, but additional notes from Dr. Gagnon continuing to excuse Barr from work were provided on February 27, 1998 and March 13, 1998.

On March 25, 1998 Chief Deputy Woodsome again wrote to Barr and renewed his request for a doctor's certification. Having received no response from Barr, Woodsome wrote a memo to Dr. Gagnon directly. Dr. Gagnon responded to this letter on April 13, 1998. This letter stated that Barr had been unable to function in his current position since February 8, 1998. The letter also stated that "Barr would be capable of his usual work duties in another department or lower level duties in his current department which do not involve high stress or critical thinking."

On June 1, 1998, Dr. Gagnon provided Barr with another note excusing him from work due to anxiety. It indicated that Barr would be able to return to work on June 11th. By a memorandum dated June 5, 1998 Woodsome advised Lieutenant Libby that Barr could not return to work until the Department received a detailed report on his medical condition. By a memorandum dated June 8, 1998, Woodsome advised Barr that the June 1st doctor's note "would not be honored by the County" because it was not a detailed report of Barr's condition. On June 12, 1998 Woodsome again wrote Dr. Gagnon and requested this report and specifically stated that in order for Barr to return to work this report was necessary. In this letter, Woodsome also requested the address of Dr. Hanley, the psychologist to whom Barr had been referred.

On July 24, 1998, Dr. Hanley provided a report on Barr. The report indicated that she had seen him on four occasions, the last time being March 28, 1999. Hanley

2

reported that in her opinion, Barr's anxiety symptoms were related to increasing friction with his supervisor, but at the conclusion of her sessions Barr did not present with anything that would adversely affect his return to work. The Department felt that this letter was not sufficiently detailed and no longer current. The Department never made a request that Sergeant Barr submit to an examination by a professional chosen by them.

In August 1998, Barr's union representative, Bill Turkewitz, was allegedly informed by the attorney for York County, William Fisher, that unless he provided the requested medical certification information, Barr would be terminated.[1] The requested information was not produced. On September 24, 1998 Woodsome sent Barr a letter informing him that he was going to be replaced.

At the time of Barr's termination Local No. 340 of the Teamsters Union was the exclusive bargaining representative of certain York County employees including Barr. A collective bargaining agreement (the "Agreement") had previously been entered into between the Union and the County. The Agreement included a provision for filing grievances and taking matters to arbitration. Pursuant to the Agreement, the Union filed grievances on behalf of Barr including alleged

---

[1]Barr argues that he was never informed that he would be terminated.

violations of Article 22 (Work Rules and Discipline), Article 19 (Sick Leave), Article 26 (Non-Discrimination), and Article 34 (Employee Files). Barr also filed a grievance alleging that the Department had discriminated against him by failing to appoint him to the position of court security officer despite his seniority.

On October 9, 1998, Barr filed a "supplemental" grievance alleging that he had been improperly discharged for excessive absenteeism due to a medical condition. Barr sought reinstatement to his full-time position as a Sergeant with full back pay and no loss of seniority or benefits.

Pursuant to the agreement, these issues were presented to the Maine Board of Arbitration and Conciliation. A hearing was conducted on September 27 and 30, 1999 and a decision was rendered on April 19, 2000. The award denied Barr's grievances on all claims other than his termination. With respect to the termination, the panel concluded that Barr had been unlawfully terminated because he had not been provided with a pretermination hearing as required by Cleveland Board of Education v. Loudermill, 450 U.S. 532 (1985). The panel concluded that this deprivation was sufficient to warrant reversal of Barr's termination.

## DISCUSSION

A claim that an arbitrator acted in excess of the authority conferred by an agreement is always open for judicial review. 14 M.R.S.A. § 5938; Caribou Bd. of Educ.v. Caribou Teachers' Ass'n, 404 A.2d 212, 215 (1979). The standard for determining whether an award exceeds an arbitrator's power is an extremely narrow one. Department of Corrections v. AFSCME, Council 93, 2000 ME 51, ¶9, 747 A.2d

4

592, 594.   In making the determination whether an arbitrator has exceeded his authority the agreement must be broadly construed and all doubts will usually be resolved in favor of the arbitrator. See Caribou Bd. Of Educ. v. Caribou Teachers' Ass'n, 404 A.2d at 215.

In Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 535 (1985) the Court held that a property interest in public employment[2] cannot be deprived except pursuant to constitutionally adequate procedures. Id. at 541.   An individual must be given notice and opportunity to be heard *before* he is deprived of any significant property interest. Id. at 542.   However, there is no provision in the Agreement in question requiring a pretermination hearing. Article 22 of the Agreement states that: " [a]ll suspensions and discharges shall be stated, in writing, and will be forwarded to the affected employee and the Union office within five (5) working days of the date said actions were taken."   Article 10 (H) states: "[t]he Arbitrator(s) shall have no authority to amend, nullify, ignore, add to or subtract from the specific provisions of this Agreement." The issue therefore becomes, did the panel exceed its authority and wrongfully impose the procedural requirement of a pretermination hearing.

Although an arbitrator may not travel outside the agreement in reaching a conclusion, the interpretation of collective bargaining agreements and the meaning to be applied to specific terms therein is ordinarily the responsibility of the arbitrator. Caribou Bd. of Educ. v. Caribou Teachers' Ass'n, 404 A.2d 212, 214 (Me.

---

[2]A statutory right to terminate only for just cause creates a constitutionally protected property right. Struck v. Hackett, 668 A.2d 411 (Me. 1995). 30-A M.R.S.A § 501 provides that county employees may only be dismissed for cause. It is apparently not disputed that Barr had a property interest in his employment.

1979). When a Collective Bargaining Agreement contains a "just cause" provision, the arbitrator may consider whether basic elements of due process have been followed as a component of just cause. Chauffeurs v. Coca-Cola Bottling Co., 613 F.2d 716 (8th Cir. 1980)(finding that just cause may imply procedural as well as substantive requirements); Johnson Boiler Co. v. Local Lodge 893, 753 F.2d 40 (6th Cir. 1985)(holding that the determination of procedural fairness is sufficiently integral to "just cause" to sustain the arbitrator's decision to decide that issue); Burke Distributing Corp. v. Professional Salesmen's Union, 1986 WL 7230 (D. Mass)(approving arbitrator's determination that [just cause] included procedural due process requirements). Although the panel's decision did not refer to "just cause" in their decision, an arbitration panel's decision will be upheld if any rational construction of the Agreement would support the Award. AFSCME, Council 93 v. City of Portland, 675 A.2d 100, 102 (Me. 1996). "An arbitrator does not exceed his authority if the arbitrator's interpretation, *even if erroneous*, nevertheless was rationally derived from the agreement." Department of Corrections v. AFSCME 93, 2000 ME 51, ¶9, 747 A.2d at 594.

In the present case, a rational construction of the Agreement supports the arbitrator's award. Although the Agreement did not explicitly provide for a pretermination hearing, nothing in the Agreement conflicts with the requirement of a hearing. There is no affirmative waiver of prior notice and opportunity to be heard. And, as noted above, "just cause" may include procedural due process

6

requirements.[3]

The entry will be:

The arbitration award is confirmed and the Department is ordered to reinstate Barr. However, both parties agree that this matter should be remanded to determine the amount of back pay owed. An arbitration award may be modified or corrected for the purpose of clarifying an award. 14 M.R.S.A. § 5935. This case is therefore remanded to the panel to determine the amount of back pay owed to Barr.

The clerk may incorporate this order in the docket by reference.

Dated:       October 20, 2000

G. Arthur Brennan
Justice, Superior Court

H. T. Reben, Esq. - PL
T. J. O'Brien, Esq. - DEF

---

[3]The panel found that in a memorandum from County Administrator David Adjutant to Sheriff Phinney dated August 26, 1998, the Department actually acknowledged the necessity for the pretermination procedure: "Before I can send a letter of termination I need Commissioner Approval per Title 30A Section 501. Also the County needs to do a Pre-determination [sic] hearing."

7