MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 23
Docket:        Ken-12-386
Argued:        January 16, 2013
Decided:       February 28, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
               JABAR, JJ.

DEPARTMENT OF PROFESSIONAL & FINANCIAL REGULATION et al.

v.

MAINE STATE EMPLOYEES ASSOCIATION,
SEIU LOCAL 1989

LEVY, J.

[¶1]  This case is before us on report from the Superior Court (Kennebec County, *Murphy, J.*), pursuant to M.R. App. P. 24(b), following a motion by the State, the Department of Professional and Financial Regulations, and the Bureau of Insurance (collectively, the Bureau), to vacate an arbitration award reinstating Michael Nadeau's employment with the Bureau of Insurance.  The Bureau contends that because Nadeau is married to a manager of a Bureau-regulated entity, the award of reinstatement requires the Bureau to violate 24-A M.R.S. § 209(1) (2012), which prohibits the Bureau from employing persons "connected with the management" of Bureau-regulated entities.  The reported question asks:

> Does 24-A M.R.S.A. § 209, by the use of the phrase "connected with the management" of listed regulated entities, prohibit the employment of persons having familial or personal relationships with managers of

regulated entities, or does it only prohibit employment of persons who are engaged in the work of managing such a regulated entity?

We decline to answer the reported question and remand for entry of a judgment confirming the arbitration award.

## I. BACKGROUND

[¶2]  "A report on agreed facts, pursuant to M.R. App. P. 24(b), presents a case to us as if it were an original action, without any prior fact-finding or rulings of law by the trial court." *Delogu v. City of Portland*, 2004 ME 18, ¶ 2, 843 A.2d 33.  In accordance with Rule 24(b), the parties have agreed to the arbitrator's finding of the following facts.

[¶3]  Nadeau was employed by the Bureau of Insurance for ten years in various professional positions, including Examiner, Senior Examiner, and Examiner-in-Charge.  As a Bureau examiner, Nadeau was responsible for conducting periodic audits of insurance companies incorporated or doing business in Maine.  During an audit, examiners are stationed at an insurer's offices for anywhere from a few weeks to several months.

[¶4]  In 2005, Nadeau was part of a team auditing the North East Insurance Company (NEIC), where he became personally acquainted with one of its managers.  After that audit was complete, Nadeau began to date the manager, and

the two married in January 2008. The Bureau expressed no concern to Nadeau about the marriage until 2010.

[¶5] In 2010, the Bureau again designated Nadeau to audit NEIC. Nadeau perceived a possible conflict of interest and he expressed to the Bureau's Deputy Superintendent, Eric Cioppa, that he objected to the assignment. Nadeau's disclosure revealed two possible bases for a conflict: (1) Nadeau's wife was an assistant vice-president of Tower Group, the parent company of NEIC; and (2) Nadeau and his wife jointly owned 243 shares of Tower Group stock. Cioppa brought the potential conflict to the attention of an Assistant Attorney General assigned to handle Bureau legal issues. The Assistant Attorney General indicated to Cioppa that Nadeau's marriage might implicate 24-A M.R.S. § 209(1) because "[m]arriage is a connection as far as section 209 goes." Cioppa agreed and the Bureau discharged Nadeau on the basis that his continued employment at the Bureau while married to a manager of a Bureau-regulated entity violated section 209(1). The Bureau did not cite Nadeau's jointly owned stock in Tower Group as a basis for the discharge.

[¶6] Nadeau initiated the grievance process mandated by the collective bargaining agreement (CBA), which yielded no resolution. There is no dispute as to the applicability of the CBA or its terms. An arbitration hearing was held in November 2011, at which both parties were represented by counsel and had an

opportunity to present evidence and cross-examine witnesses. The arbitrator concluded that the Bureau violated the CBA by discharging Nadeau without just cause. The arbitrator expressly declined to interpret section 209(1), but concluded that the Bureau did not meet its burden to show "just cause" because it did not present sufficient legal authority to support its assertion that section 209(1) mandated Nadeau's discharge. The arbitrator awarded Nadeau compensation for lost wages and benefits and ordered his reinstatement.

[¶7] The Bureau then petitioned the Superior Court pursuant to 14 M.R.S. § 5938(1)(C) (2012) and M.R. Civ. P. 7(b), seeking to vacate the arbitration award on the ground that the arbitrator exceeded his powers by issuing an award that required the Bureau to reinstate Nadeau. The Bureau contended that the reinstatement order is inconsistent with the Superintendent's interpretation of 24-A M.R.S. § 209(1) as barring the Bureau's employment of a person married to a manager of an insurance company regulated by the Bureau. The court reported the case to us on the ground that "the question of law presented is of sufficient importance or doubt to justify [the] report."

## II. DISCUSSION

[¶8] Pursuant to section 5938(1)(C) of the Uniform Arbitration Act, 14 M.R.S. §§ 5927-5949 (2012), a court shall vacate an arbitrator's award "if the arbitrator exceeds his powers by contravening public policy." *Dep't of Corr. v.*

*Am. Fed'n of State, Cnty. & Mun. Emps., Council 93*, 2000 ME 51, ¶ 14, 747 A.2d 592. "An arbitrator's award violates public policy if it requires conduct beyond that to which a public employer may bind itself or allow itself to be bound." *Id.* (quotation marks and alteration omitted). However, "that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." 14 M.R.S. § 5938(1). Thus, for a court to vacate an arbitrator's award for exceeding his powers, "[t]he public policy violated by the award . . . must be affirmatively expressed or defined in the laws of Maine." *Dep't of Corr.*, 2000 ME 51, ¶ 14, 747 A.2d 592.

[¶9] The requirement that a policy be "affirmatively expressed or defined in the laws of Maine" serves an important jurisprudential purpose. As a general rule, our law prohibits judicial review of arbitration awards for legal error. *See HL 1, LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 19, 15 A.3d 725. Section 5938 serves as an exception to that rule. *See id.* If section 5938(1)(C) permitted judicial review of awards that violate policies merely reflected in the law, the effect would be to make arbitration awards reviewable for legal error, and the exception would swallow the rule. In contrast, the requirement that a policy not simply be codified, but also "affirmatively expressed or defined in the laws of Maine," preserves the balance between ensuring finality of arbitration awards and protecting public policy.

[¶10]   We have previously concluded that an ambiguous statute does not affirmatively express or define a public policy.  In *Department of Transportation v. Maine State Employees Ass'n, SEIU Local 1989*, 606 A.2d 775, 776 (Me. 1992), an arbitrator directed the Department of Transportation to reconsider its decision to promote a more junior employee over a more senior employee.  On appeal, the DOT contended that the arbitrator's award violated public policy because it conflicted with a statute requiring that the DOT base its promotions on "merit and fitness."  *Id.* at 776-77.  We concluded that the award at issue did not violate any affirmatively expressed or defined public policy because the statute did not define "merit and fitness."  *Id.* at 778.

[¶11]   Section 209(1) is similarly ambiguous.  It states that "any examiner or employee of the bureau shall not be connected with the management" of the Bureau's regulated entities.[1]  24-A M.R.S. § 209(1).  The statute does not define "connected with the management," and, as the parties' competing arguments make

---

[1]  The provision states:

> The superintendent, or his deputy, or any examiner or employee of the bureau shall not be connected with the management or be holder of a material number of shares of any insurer, insurance holding company, insurance agency or broker, or be pecuniarily interested in any insurance transaction, except as a policyholder or claimant under a policy; except that as to matters wherein a conflict of interests does not exist on the part of any such individual, the superintendent may employ and retain from time to time insurance actuaries, examiners, accountants, and other technicians who are independently practicing their professions even though from time to time similarly employed or retained by insurers or others.

24-A M.R.S. § 209(1) (2012).

clear, the provision is reasonably susceptible to two meanings. If "management" refers to the people who manage, as the Bureau contends, then the provision would prohibit employees from being connected to a manager of a regulated entity, and would prohibit a close personal relationship, such as marriage. If "management" refers to the act of managing, as the MSEA contends, then the provision would prohibit employees from being connected to the act of managing a regulated entity, and it would not prohibit personal relationships, such as marriage. In addition, there is neither any legal precedent interpreting the provision nor any illuminating legislative history from which section 209(1) can be understood to affirmatively express or define a public policy. Under these circumstances, section 209(1) does not affirmatively express or define a public policy that a Bureau employee cannot be married to a manager of a Bureau-regulated entity. *See Dep't of Transp.*, 606 A.2d at 778.

[¶12] Because the arbitration award ordering Nadeau's reinstatement did not violate a public policy "affirmatively expressed or defined in the laws of Maine," the arbitrator did not exceed his powers, and the award is not subject to further judicial scrutiny on that basis. *See Dep't of Corr.*, 2000 ME 51, ¶ 14, 747 A.2d 592. Accordingly, we respond to the reported question as follows: We do not determine whether the arbitrator's reinstatement order violates 24-A M.R.S.

§ 209(1), because the order is not amenable to judicial review pursuant to 14 M.R.S. § 5938(1)(C).

The entry is:

>Remanded to the Superior Court for entry of a judgment consistent with this opinion.

---

**On the briefs:**

William J. Schneider, Attorney General, Thomas Sturtevant, Jr., Asst. Atty. Gen., Jonathan R. Bolton, Asst. Atty. Gen., and Susan P. Herman, Asst. Atty. Gen., Office of the Attorney General, Augusta; and Cynthia L. Montgomery, Chief Counsel, Office of Employee Relations, Augusta, for appellants Department of Professional & Financial Regulation and Bureau of Insurance

Timothy L. Belcher, Esq., Maine State Employees Association, Augusta, for appellee Maine State Employees Association, SEIU Local 1989

**At oral argument:**

Jonathan R. Bolton, Asst. Atty. Gen., for appellants Department of Professional & Financial Regulation and Bureau of Insurance

Timothy L. Belcher, Esq., for appellee Maine State Employees Association, SEIU Local 1989