MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 111
Docket:      Cum-15-377
Argued:      April 7, 2016
Decided:     July 14, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

XPRESS NATURAL GAS, LLC

v.

CATE STREET CAPITAL, INC., et al.

SAUFLEY, C.J.

[¶1] Cate Street Capital, Inc., appeals from a judgment in which the Superior Court (Cumberland County, *Warren, J.*) granted an application to confirm an arbitration award and denied a competing motion to vacate that award. In the award that Cate Street challenges on appeal, the arbitrator determined that Cate Street was responsible on its agreement to guarantee $1,500,000 in payments owed to Xpress Natural Gas, LLC, by Cate Street's subsidiary, GNP Parent, LLC— formerly known as Great Northern Paper Company, LLC—for the installation of equipment and the delivery of compressed natural gas to the Great Northern Paper Mill in East Millinocket. Because the arbitrator's interpretation "was rationally derived from the agreement," *Dep't of Corr. v. AFSCME, Council 93*, 2000 ME

2

51, ¶ 9, 747 A.2d 592 (quotation marks omitted), we affirm the judgment confirming the arbitration award.

## I. BACKGROUND

[¶2] Although the arbitrator did not make extensive findings of fact and additional findings were not requested, the sequence of events in this case is not in dispute. GNP, the owner of the Great Northern Paper Mill, entered into a sales agreement[1] on September 18, 2012, to purchase compressed natural gas from Xpress as fuel for the mill. By the sales agreement's terms, the conversion of equipment to use natural gas at the mill was to occur in time for gas delivery to commence on March 31, 2013.

[¶3] Also on September 18, 2012, Cate Street, the corporate owner of GNP, executed a guarantee of the amounts payable by GNP on transactions provided for in the sales agreement, up to $1,500,000. The guarantee contains the following provision relevant to the issue in this appeal:

> 1. Guarantee. In consideration of [Xpress Natural Gas, LLC] from time to time entering into natural gas transactions under that certain Contract for the Sale of Compressed Natural Gas (the "Agreement"), with Great Northern Paper Company LLC . . . , an wholly owned subsidiary of [Cate Street Capital, Inc.], [Cate Street] irrevocably and unconditionally guarantees to [Xpress], its successors and assigns, the prompt payment when due, subject to any applicable grace period under the Agreement, of all present and future amounts

---

[1] The agreement itself was not presented to the Superior Court and therefore is not part of the record on appeal. We discern the nature of the agreement from the statement of claim presented to the arbitrator.

payable by [GNP] to [Xpress] under the Agreement (even if such payments are deemed to be damages) **not to exceed ONE MILLION FIVE HUNDRED THOUSAND US dollars ($1,500,000.00)** (the "Obligations"). [Xpress] may make written demand of [Cate Street] for any Obligation not paid by [GNP] when due, subject to applicable grace periods, and [Cate Street] shall pay such Obligations within five (5) business days of receipt of such demand. Notwithstanding any other provision hereof to the contrary, (a) [Cate Street] may terminate its obligations hereunder upon 30 days' prior written notice to [Xpress] with respect to transactions as defined in the Agreement (the "Transaction") entered into after the expiration of such 30 day period, and (b) *to the extent not earlier terminated pursuant to clause (a), this Guarantee shall automatically terminate on October 1, 2013. However, in either case of termination, no such termination shall affect Guarantor's liability with respect to any Transaction entered into prior to the time the termination is effective, which Transaction shall remain guaranteed pursuant to the terms of this Guarantee.*

(Emphasis added.)

[¶4] GNP was ultimately not able to prepare the mill property for the installation of equipment and delivery of the gas by March 31, 2013. Additional agreements were reached before the guarantee's automatic termination date of October 1, 2013, to extend the deadline for the conversion of equipment and initial delivery of gas, and to establish new terms for GNP to finance the conversion through a loan from Xpress, also guaranteed by Cate Street, with payments to Xpress scheduled through fall 2013. After GNP failed to make the required payments for natural gas and defaulted on the conversion-related loan, the parties proceeded, pursuant to the terms of their agreements, to private arbitration.

4

[¶5]  In Xpress's statement of claim submitted to the arbitrator, it sought damages from GNP for breach of the sales agreement and default on the loan, and from Cate Street for breach of its guarantees, and it requested the return of its personal property located at the mill site.  After receiving an answer, with counterclaims and defenses, from GNP and Cate Street, and after holding a hearing and receiving briefs from the parties, the arbitrator entered an award finding GNP and Cate Street liable to Xpress.  In addition to other determinations of liability, the arbitrator found Cate Street liable to Xpress for $1,500,000 on the guarantee at issue in this appeal.

[¶6]  Xpress applied to the Superior Court to confirm the arbitration award. *See* 14 M.R.S. § 5937 (2015).  Cate Street and GNP moved to vacate the award in part, on the ground that the arbitrator had exceeded his authority in awarding Xpress $1,500,000 in damages on the guarantee of payments because, they argued, the guarantee had automatically terminated, by its terms, on October 1, 2013.  *See* 14 M.R.S. § 5938 (2015).  After receiving memoranda from the parties, the court entered a judgment granting Xpress's application to confirm the award and denying Cate Street and GNP's motion to vacate the award.  Cate Street and GNP timely appealed.  *See* 14 M.R.S. § 1851 (2015); M.R. App. P. 2.

## II.  DISCUSSION

[¶7]  Cate Street and GNP argue that the arbitrator exceeded his authority by interpreting the guarantee in a way that shows a manifest disregard for the contract. Specifically, they argue that there is no guarantee of payment on transactions that were to be effectuated after October 1, 2013.[2]

[¶8]  Our review of the decision of an arbitrator is much more limited than a review of a court decision; the award of an arbitrator "will not be vacated even when there is an error of law or fact, unless the challenger demonstrates that the arbitration violated one of the grounds to vacate an award stated in 14 M.R.S. § 5938(1)." *Leete & Lemieux, P.A. v. Horowitz*, 2012 ME 115, ¶ 12, 53 A.3d 1106. Relevant here, section 5938(1) authorizes courts to vacate arbitration awards if "arbitrators exceeded their powers."  14 M.R.S. § 5938(1)(C).  An arbitrator has exceeded his or her powers if no rational construction of the agreement could support the award. *See Stanley*, 2015 ME 21, ¶ 26, 111 A.3d 663.  "The burden of demonstrating that an arbitrator exceeded his or her authority lies with the party seeking to vacate the award." *Id.* ¶ 23.

---

[2]  Although Xpress also argues that Cate Street and GNP waived any defense based on the expiration language by failing to plead it as an affirmative defense or otherwise raise it before or during the arbitration hearing, Cate Street and GNP argue only a narrow legal issue on appeal—an argument that they did present to the arbitrator in their post-hearing brief.  Because no factual disputes have been raised, it is immaterial to the appeal whether Cate Street and GNP bore the burden of proof on any pertinent factual disputes that could arise from an ambiguity in the language of the guarantee. *See Westbrook Sch. Comm. v. Westbrook Teachers Ass'n*, 404 A.2d 204, 211-12 (Me. 1979).  Accordingly, we do not decide here whether the defense had to be pleaded or proved by Cate Street and GNP as an affirmative defense.

6

[¶9]     "The standard for determining whether an award exceeds an arbitrator's power is an extremely narrow one." *AFSCME, Council 93 v. City of Portland*, 675 A.2d 100, 102 (Me. 1996).  "It is, after all, the arbitrator's construction of the contract that was bargained for and only when there is manifest disregard of the contract will we disturb the award." *Bureau of Me. State Police v. Pratt*, 568 A.2d 501, 505 (Me. 1989).  We afford arbitrators a high degree of deference, "with all doubts generally resolved in favor of the arbitrator's authority." *Dep't of Corr.*, 2000 ME 51, ¶ 9, 747 A.2d 592.  "[A]n arbitrator does not exceed his authority if the arbitrator's interpretation, *even if erroneous*, nevertheless was rationally derived from the agreement." *Id.* (quotation marks omitted) (alteration in original).  The arbitrator's interpretation will be upheld "if *any* rational construction of the agreement *could* support" that interpretation. *Stanley*, 2015 ME 21, ¶ 26, 111 A.3d 663 (quotation marks omitted).

[¶10]     Although the Superior Court's reasoning upon review of an arbitration award is helpful to us and to the parties, we review the award of an arbitrator directly with respect to legal questions such as whether the arbitrator exceeded the scope of his or her authority. *See Stanley v. Liberty*, 2015 ME 21, ¶ 23, 111 A.3d 663; *Randall v. Conley*, 2010 ME 68, ¶ 21, 2 A.3d 328.  When an arbitrator has acted within his or her authority, we will uphold an award based on the arbitrator's interpretation of a contract unless we conclude that the Superior

Court "was compelled to vacate it" for other reasons, such as fraud or corruption. *Stanley*, 2015 ME 21, ¶ 23, 111 A.3d 663; *Randall*, 2010 ME 68, ¶ 11, 2 A.3d 328. This standard differs from the usual de novo review of a trial court's interpretation of an unambiguous contract. *Cf. CitiMortgage, Inc. v. Chartier*, 2015 ME 17, ¶ 7, 111 A.3d 39 ("We review the meaning of a contract de novo and interpret an unambiguous provision according to the plain meaning of its terms." (quotation marks omitted)).

[¶11] There are, however, limits to an arbitrator's authority in interpreting a contract. "In reaching a conclusion . . . arbitrators may not travel outside the agreement" and base the award "on their own individual concept of justice in the particular area involved." *AFSCME, Council 93*, 675 A.2d at 102. "An arbitrator does not have unfettered discretion and may not fashion a remedy that directly contradicts the language of the agreement." *Id.*

[¶12] Applying these standards, we have concluded that arbitrators did not "exceed[] their powers" when their awards were based on rational constructions of the contracts submitted for interpretation, even if those contracts could have been interpreted differently. 14 M.R.S. § 5938(1)(C); *see, e.g.*, *Dep't of Transp. v. Me. State Emps. Ass'n*, 610 A.2d 750, 752-53 (Me. 1992) (affirming an award interpreting "just cause" for reprimand as distinct from "just cause" for discharge); *Augusta Uniformed Firefighters Ass'n, Local 1650 v. City of Augusta*, 600 A.2d

403, 404 (Me. 1991) (affirming an award interpreting "just cause" to allow the termination of employment based on an employee's off-duty conduct); *City of Westbrook v. Teamsters Local No. 48*, 578 A.2d 716, 720-21 (Me. 1990) (affirming an award in which the word "and" was interpreted in the disjunctive to give effect to the parties' intent in executing the agreement); *Westbrook Sch. Comm. v. Westbrook Teachers Ass'n*, 404 A.2d 204, 211-12 (Me. 1979) (affirming an award interpreting a requirement of "just cause" to apply "to extracurricular as well as regular teaching contracts").

[¶13]  In contrast, we have held that an arbitrator exceeded the powers conferred on the arbitrator when the arbitrator applied a contract to a person whose employment was not governed by the contract's terms, *see Dep't of Transp. v. Me. State Emps. Ass'n, SEIU Local 1989*, 1999 ME 7, ¶¶ 8-14, 727 A.2d 896; the arbitrator determined a matter that was not subject to arbitration, *see Sch. Admin. Dist. No. 58 v. Mount Abram Teachers Ass'n*, 1997 ME 219, ¶¶ 5-8, 704 A.2d 349; *Superintending Sch. Comm. v. Portland Teachers' Ass'n,* 338 A.2d 155, 157-58 (Me. 1975); and the arbitrator effectively rewrote the contract, *see Caribou Bd. of Educ. v. Caribou Teachers Ass'n*, 404 A.2d 212, 215 (Me. 1979).

[¶14]  The arbitrator did not exceed his authority here.  The arbitrator did what was asked of him: he interpreted the guarantee to determine which parties would be liable and for how much.  The relevant language in the guarantee

provided that no termination of the guarantee would "affect [Cate Street]'s liability with respect to any Transaction entered into prior to the time the termination is effective, which Transaction shall remain guaranteed pursuant to the terms of this Guarantee." The arbitrator interpreted an undefined term—"Transaction"—to include the sales agreement, which was entered into before the automatic termination date of October 1, 2013. In doing so, the arbitrator did not exceed the scope of his authority but instead found any necessary facts and rationally interpreted the agreements submitted for decision to resolve the dispute and determine liability.

The entry is:

Judgment affirmed.

**On the briefs:**

Brian L. Champion, Esq., and Tyler J. Smith, Esq., Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellants Cate Street Capital, Inc., and GNP Parent, LLC

Jennifer A. Archer, Esq., and Timothy H. Norton, Esq., Kelly Remmel & Zimmerman, Portland, for appellee Xpress Natural Gas, LLC

**At oral argument:**

Brian L. Champion, Esq., for appellants Cate Street Capital, Inc., and GNP Parent, LLC

Timothy H. Norton, Esq., for appellee Xpress Natural Gas, LLC

Cumberland County Superior Court docket number CV-2015-103
FOR CLERK REFERENCE ONLY