2011 ME 29

**HL 1, LLC, et al.**

**v.**

**RIVERWALK, LLC, et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 12, 2011.
Decided: March 10, 2011.

George J. Marcus, Esq., (orally), David C. Johnson, Esq., Marcus, Clegg & Mistretta, P.A., Portland, ME, for HL 1, LLC, Shipyard Brewing Company, LLC, and Fred M. Forsley.

Paul F. Driscoll, Esq., David A. Goldman, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, Stephen H. Oleskey, Esq. (orally), Karen D. Stringer, Esq., Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for Intercontinental Fund IV Ocean Gateway, LLC, Intercontinental Real Estate Investment Fund IV, LLC, and Intercontinental Real Estate Corporation.

Seth W. Brewster, Esq., Verrill Dana, LLP, Portland, ME, for Pennbrook Properties II, LLC.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] In this appeal, we must decide whether the grounds for vacating an arbitration award enumerated in the Maine Uniform Arbitration Act are exclusive or whether parties can expand those grounds by agreement to provide for judicial review of arbitration awards on questions of law.

[¶ 2] HL 1, LLC, Shipyard Brewing Co., LLC, and Fred M. Forsley appeal

from a judgment entered on the Business and Consumer Docket (*Nivison, J.*) in favor of Riverwalk, LLC; Ocean Gateway Garage, LLC; OGG, LLC; Pennbrook Properties II, LLC; Intercontinental Fund IV Ocean Gateway, LLC; Intercontinental Real Estate Investment Fund; and Intercontinental Real Estate Corporation (collectively, Riverwalk Defendants), (1) confirming an arbitration award after denying judicial review of alleged errors of law made by the arbitration panel; (2) declaring, on summary judgment, that HL 1, Shipyard Brewing, and Forsley are collaterally estopped from relitigating factual issues that were resolved in arbitration; and (3) declaring, on summary judgment, that Shipyard Brewing lacks standing to seek judicial dissolution of Ocean Gateway Garage, LLC. We affirm the judgment.

## I. BACKGROUND

[¶ 3] This dispute arises from complex business and financing arrangements related to a real estate development in Portland. Pursuant to an arbitration agreement that expressly provided that "each party shall retain his right to appeal any questions of law arising at the hearing," the parties arbitrated issues regarding control of a business entity and the enforceability of a financing restructure agreement. After arbitration, HL 1, Shipyard Brewing, and Forsley sought review in the Business and Consumer Docket of legal conclusions made by the arbitration panel. The court ruled that the Maine Uniform Arbitration Act precluded judicial review of questions of law and confirmed the award. The court resolved other claims through motions to dismiss and for summary judgment. This appeal followed.

[¶ 4] The following detailed facts are either undisputed or established in the summary judgment record. Forsley is the sole owner and member of HL 1, LLC. He is also the president and manager of Shipyard Brewing Co., LLC, and owns an 80% interest in the company. In 2003, HL 1, LLC, together with Pennbrook Properties II, LLC, Downeast Holdings, LLC, and HP Longfellow, LLC,[1] formed Riverwalk, LLC, to develop and construct a multi-use real estate development, including a parking garage and condominiums. The members of Riverwalk also formed two separate entities related to the parking garage. Ocean Gateway Garage, LLC, was created to own, construct, and manage the garage. OGG, LLC, was created to purchase the garage from Ocean Gateway Garage for $11 million pursuant to a purchase and sale agreement (Garage P & S).

[¶ 5] Riverwalk purchased land for the project from Shipyard Brewing in exchange for two $1 million promissory notes. Ocean Gateway Garage executed the first $1 million promissory note (Garage Note) in favor of Shipyard Brewing, payable upon the sale of the garage at the price of $11 million.

[¶ 6] Riverwalk also entered into a mezzanine loan agreement[2] with a group of Massachusetts entities (collectively, Intercontinental)[3] to borrow up to $19 mil-

---

1. By agreement of the parties, all claims against Downeast Holdings, LLC, and HP Longfellow, LLC, were dismissed with prejudice.

2. A mezzanine loan is a form of secondary financing that is typically secured by stock or other ownership interest. *See generally* Corry Silbernagel & Davis Vaitkunas, *Mezzanine Finance*, Bond Capital (June 2010), http://www. bondcapital.ca/media/pdf/Bond_Capital_ Mezzanine_Finance.pdf (explaining mezzanine finance).

3. The business entities are Intercontinental Fund IV Ocean Gateway, LLC, Intercontinental Real Estate Investment Fund IV, LLC, and Intercontinental Real Estate Corporation.

lion to fund construction of the development, including the garage. In connection with the mezzanine loan, Forsley provided a personal guaranty to cover up to $3 million of any shortfall if the actual sale price of the garage is less than $11 million. In November 2007, Intercontinental sent Riverwalk a notice of default pursuant to the mezzanine loan agreement because it considered the development's projected proceeds to be out of balance with its costs. Intercontinental then sent the Riverwalk members a proposed memorandum of understanding (MOU) outlining terms by which it would continue financing the development.

[¶ 7] After some negotiation, the parties signed an MOU in December 2007, and Intercontinental resumed funding for the garage. The terms of the MOU increased the sale price of the garage from $11 to $12 million and provided that Intercontinental and OGG would each own 50% of a joint venture that would replace OGG as the buyer of the garage. Although the MOU required Intercontinental and OGG to document the joint venture agreement, the arbitrators found that they were subsequently unable to reach agreement, and the documentation was never completed.

[¶ 8] Pursuant to the OGG Operating Agreement, the manager and members of OGG were required to "use their good faith, diligent and reasonable commercial efforts" to secure a "Guaranty Relief" substitute for the $4 million purchase price security provided for by Forsley's $3 million personal guaranty and Shipyard Brewing's $1 million Garage Note. If no Guaranty Relief was secured within fifteen months of the effective date of the Garage P & S, then Forsley was entitled to become the manager of OGG, and HL 1 was entitled to become the sole member of OGG. The Operating Agreement also pro-

vided that all disputes between the parties would be submitted to arbitration.

[¶ 9] In March 2008 (more than fifteen months after execution of the Garage P & S), HL 1, Shipyard Brewing, and Forsley sued the Riverwalk Defendants for a declaratory judgment stating that (1) the MOU is not binding or enforceable; (2) the original Garage P & S and Garage Note are binding and enforceable; and (3) Forsley is the sole manager and HL 1 is the sole member of OGG because no Guaranty Relief had been secured pursuant to the OGG Operating Agreement. Forsley, Shipyard Brewing, and HL 1 later amended their complaint to also seek (4) damages for default of the Garage Note; (5) judicial dissolution of Ocean Gateway Garage pursuant to 31 M.R.S. § 702(2) (2010); and (6) appointment of a liquidating trustee, pursuant to 31 M.R.S. § 703(1) (2010), to oversee the judicial dissolution of OGG.

[¶ 10] Pennbrook and Intercontinental moved to compel arbitration pursuant to section 11.01 of the OGG Operating Agreement:

> 11.01 *Arbitration.* All disputes and controversies between the parties hereto arising out of or in connection with this Agreement shall be submitted to arbitration pursuant to the following procedure. Either party may, by written notice to the other within thirty (30) days after the controversy has arisen hereunder, appoint an arbitrator who shall be either an attorney or accountant. The other party shall, by written notice, within fifteen (15) days after receipt of such notice by the first party, appoint a second arbitrator who shall also be an attorney or accountant, and in default of such second appointment the first arbitrator shall serve as the sole arbitrator. When two arbitrators have been appointed as hereinabove provided, they shall agree on a third arbitrator and

shall appoint him by written notice signed by both of them and a copy mailed to each party hereto within fifteen (15) days after such appointment. On appointment of three arbitrators (or one arbitrator if there was no appointment of a second arbitrator) as hereinabove provided, such arbitrators shall hold an arbitration hearing within thirty (30) days after such appointment. At the hearing the three arbitrators shall allow each party to present his case, evidence, and witnesses, if any, in the presence of the other party, and shall render their award, including a provision for payment of costs and expenses of arbitration to be paid by one or both of the parties hereto, as the arbitrators deem just. The decision of the majority of the arbitrators shall be binding on the parties hereto (*although each party shall retain his right to appeal any questions of law arising at the hearing*), and judgment may be entered thereon in any court having jurisdiction.

(Emphasis added.) The OGG Operating Agreement also provided that it would be governed by Maine law and that unenforceable provisions were severable:

11.05 *Application of Maine Law.* This Operating Agreement, and the interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of Maine, without reference to its choice of law provisions, and specifically the [Maine Limited Liability Company] Act.

. . . .

11.11 *Severability.* If any provision of this Operating Agreement or the application thereof to any Person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

In July 2008, the court granted the motion to compel arbitration. In its order, the court did not address that part of section 11.01 that reserved the parties' right to appeal questions of law arising at the arbitration hearing.

[¶ 11] In October 2008, following a three-day arbitration hearing, a panel of three arbitrators issued an award declaring that the "MOU is valid, effective, duly authorized and binding on the parties thereto" and that Forsley and HL 1 were not entitled to become the sole manager and sole member of OGG.

[¶ 12] In November 2008, the Riverwalk Defendants moved for judicial confirmation of the arbitration award and dismissal of the amended complaint. In response, HL 1, Shipyard Brewing, and Forsley filed a notice of appeal of the arbitration award with the court to challenge conclusions of law made by the arbitration panel.

[¶ 13] In April 2009, the court confirmed the arbitration award. The court followed the United States Supreme Court's reasoning in *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (interpreting the Federal Arbitration Act, 9 U.S.C.S. § 10 (LexisNexis 2008)) and concluded that the enumerated grounds for vacating an arbitration award in the Maine Uniform Arbitration Act, 14 M.R.S. § 5938 (2010), are exclusive and do not provide for judicial review of arbitration awards for errors of law. Pursuant to the severability clause set forth in section 11.11 of the OGG Operating Agreement, the court severed the judicial review provision contained in section 11.01.

[¶ 14] In September 2009, after a hearing on the motion to dismiss, the court concluded that Forsley was collaterally estopped from claiming that the MOU was

not binding or enforceable, and it dismissed those parts of the amended complaint. The court denied the motion to dismiss with respect to the remaining claims because collateral estoppel could not be applied when, on the face of the pleadings and relevant documents, it was not clear whether the arbitration proceedings addressed all of the factual issues central to those claims.

[¶ 15] In November 2009, the Riverwalk Defendants moved for summary judgment on the remaining claims related to the enforceability of the Garage P & S; default of the Garage Note; Forsley and HL 1's entitlement to control OGG; and judicial dissolution of Ocean Gateway Garage. Based on a more fully developed summary judgment record, the court concluded that the factual issues related to the remaining claims were resolved in arbitration and that HL 1, Shipyard Brewing, and Forsley were collaterally estopped from relitigating them. The court also determined that Shipyard Brewing was not a creditor of Ocean Gateway Garage and did not have standing to seek judicial dissolution. Accordingly, in April 2010, the court entered a summary judgment in favor of the Riverwalk Defendants. HL 1, Shipyard Brewing, and Forsley (hereinafter, Forsley) timely appealed.

## II. DISCUSSION

### A. Confirmation of the Arbitration Award

#### 1. Maine Uniform Arbitration Act

■ [¶ 16] Forsley contends that the court erred by interpreting the Maine Uniform Arbitration Act (MUAA) to preclude judicial review of arbitration awards on questions of law when an arbitration agreement expressly provides for such review. He argues that allowing parties to structure arbitration agreements flexibly would support the policy of encouraging arbitration.

■ [¶ 17] We review the interpretation of statutes de novo. *Garrison City Broad., Inc. v. York Obstetrics & Gynecology, P.A.*, 2009 ME 124, ¶ 9, 985 A.2d 465, 468. Only when we determine that a statute is ambiguous do we look beyond the plain language of the statute and the context of the whole statutory scheme to indicia of legislative intent such as the statute's history and its underlying policy. *Id.; Pennings v. Pennings*, 2002 ME 3, ¶ 13, 786 A.2d 622, 627; *Smith v. Hawthorne*, 2006 ME 19, ¶ 30, 892 A.2d 433, 440 (Alexander, J., concurring).

[¶ 18] As provided in section 11.05 of the OGG Operating Agreement, the agreement, including the parties' retained "right to appeal any questions of law" in section 11.01, is governed by the laws of Maine. The MUAA provides, "Upon application of a party, the court shall confirm an award, unless ... grounds are urged for vacating ... the award, in which case the court shall proceed as provided in section[ ] 5938...." 14 M.R.S. § 5937 (2010). Section 5938 enumerates a number of grounds for vacating an arbitration award, but errors of law are not among them. *See* 14 M.R.S. § 5938(1).[4]

4. Title 14 M.R.S. § 5938(1) (2010) provides:

> **1. Vacating award.** Upon application of a party, the court shall vacate an award where:
> **A.** The award was procured by corruption, fraud or other undue means;
> **B.** There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
> **C.** The arbitrators exceeded their powers;

[¶ 19] We have previously held that an "arbitrator's decision is final and binding and non-reviewable save as specifically provided by [section] 5938. A reviewing court is not empowered to overturn an arbitration award merely because it believes that sound legal principles were not applied." *Bd. of Dirs. of Me. Sch. Admin. Dist. No. 33 v. Teachers' Ass'n of Me. Sch. Admin. Dist. No. 33*, 395 A.2d 461, 463 (Me.1978). Although this holding suggests that the grounds for vacatur listed in section 5938 are exclusive, in that case we did not address the circumstance where, as here, the parties agreed to expand judicial review of an arbitration award to include errors of law.

[¶ 20] The pertinent facts of this case, however, are similar to those of *Hall Street*, where the United States Supreme Court interpreted the correlative provision of the Federal Arbitration Act (FAA). *See* 552 U.S. at 579–80, 128 S.Ct. 1396. Similar to the MUAA, the FAA provides grounds for vacating an arbitration award that do not include claimed errors of law. *See* 9 U.S.C.S. § 10(a).[5] In *Hall Street*, a party sought to vacate, modify, or correct an arbitration award after the parties arbitrated a dispute pursuant to an arbitration agreement that provided, "The Court shall vacate, modify or correct any award . . . where the arbitrator's conclusions of law are erroneous." *See* 552 U.S. at 579, 128 S.Ct. 1396 (quotation marks omitted). The Court held that the FAA provided exclusive grounds for vacating arbitration awards and that those grounds may not be supplemented by contract. *See id.* at 578, 584, 128 S.Ct. 1396. Resolving a split in the federal circuit courts of appeals on this question, the Court applied a textual statutory analysis and concluded that there was "no textual hook" to include "just any legal error" among enumerated statutory grounds for vacatur that were, by their terms, restricted to egregious and extreme conduct by arbitrators. *Id.* at 586, 128 S.Ct. 1396; *see* 9 U.S.C.S. § 10(a)(1)-(4). The Court further reasoned that there was

D. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 5931, as to prejudice substantially the rights of a party;
E. There was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection; or
F. The award was not made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court has ordered, and the party has not waived the objection.
But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

5. Title 9 U.S.C.S. § 10(a) (LexisNexis 2008) provides:

**§ 10. Same; vacation; grounds; rehearing**
(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"no hint of flexibility" in the FAA's compulsory language: "the court must grant [an order confirming the award] unless the award is vacated ... as prescribed in section[ ] 10 ... of this title." *Hall Street,* 552 U.S. at 587, 128 S.Ct. 1396 (quotation marks omitted) (citing 9 U.S.C.S. § 9 (LexisNexis 2008)).[6] The *Hall Street* Court noted that expanded review of arbitration awards may be available pursuant to state common law or statutes, "where judicial review of different scope is arguable." *Id.* at 590, 128 S.Ct. 1396.

[¶ 21] With *Hall Street's* textual analysis in mind, we consider section 5938(1) in the context of the entire statutory scheme of the MUAA. *See Garrison City Broad.,* 2009 ME 124, ¶ 9, 985 A.2d at 468.

[¶ 22] Both the FAA and MUAA share origins in New York's 1920 arbitration statute. *See Hall Street,* 552 U.S. at 589 n. 7, 128 S.Ct. 1396; Unif. Arbitration Act (1956) Prefatory Note, 7 (Part 1A) U.L.A. 100 (2009). Consequently, the language of the FAA and the MUAA are substantially similar. Like the "must grant" language of section 9 of the FAA, there is no "hint of flexibility" in the language of section 5937: "the court *shall* confirm an award, unless ... grounds are urged for vacating ... the award, in which case the court

*shall* proceed as provided in section[ ] 5938...." *See* 14 M.R.S. § 5937 (emphasis added). As the *Hall Street* Court concluded with section 9 of the FAA, the mandatory language of section 5937 implies a limited role for the court. *See* 552 U.S. at 587, 128 S.Ct. 1396.

■ [¶ 23] Section 5938(1) of the MUAA, however, provides two additional grounds for vacating awards that are not included in the FAA:

**E.** There was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928[7] and the party did not participate in the arbitration hearing without raising the objection; or

**F.** The award was not made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court has ordered, and the party has not waived the objection.

14 M.R.S. § 5938(1)(E), (F) (footnote added). These subsections do not address egregious conduct by the arbitrator; rather, they provide grounds for vacatur based on disputes about the existence of an agreement to arbitrate and issues of timeliness.[8] Following *Hall Street's* textual analysis, the MUAA's inclusion of these

---

6. Title 9 U.S.C.S. § 9 (LexisNexis 2008) provides, in relevant part:

> **§ 9. Award of arbitrators; confirmation; jurisdiction; procedure**
> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title [9 USCS §§ 10, 11].

7. Section 5928 provides, in relevant part:

> On application of a party showing an agreement [to arbitrate] and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the *determination of the issue* so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.
> 14 M.R.S. § 5928(1) (2010) (emphasis added).

8. Forsley also contends that because the OGG Operating Agreement reserved the right to appeal questions of law, "the arbitration agreement [did] not submit to the arbitrators the final and binding right to decide 'questions of law,' and these are instead reserved for a court." He argues, therefore, that there

technical or procedural grounds for vacatur does not provide a "textual hook" for expanding the scope of the statute beyond its express terms. *See Hall Street*, 552 U.S. at 586, 128 S.Ct. 1396.

[¶ 24] Significantly, unlike the FAA, the MUAA contains language at the end of section 5938(1) that further limits the court's authority: "But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."[9] 14 M.R.S. § 5938(1).

[¶ 25] Additionally, in contrast with section 5938(1), other sections of the MUAA expressly contemplate that parties may control certain aspects of arbitration by agreement. These sections provide default rules for arbitration that apply unless otherwise provided by the agreement. *See* 14 M.R.S. §§ 5929, 5930, 5931, 5934 (2010) (addressing appointment of arbitrators, procedure for arbitration, and time for making an award). We also note that, in the context of public employees labor relations law, the Legislature expressly provided for judicial review of an arbitration decision for errors of law. *See* 26 M.R.S. §§ 972, 979–M (2010).[10] It is apparent that the Legislature knew how to create statutory language that allows parties to structure arbitration agreements flexibly. Consequently, the absence of such language in section 5938(1) demonstrates the Legislature's intent to occupy the field and limit the grounds for vacatur to those enumerated in the statute. *See Me. Sch. Admin. Dist. No. 15 v. Raynolds*, 413 A.2d 523, 527 (Me.1980).

was no agreement to arbitrate questions of law, and that subsection (1)(E) provides grounds for the court to vacate this award. We disagree. Subsection (1)(E) allows a court to vacate an award if the dispute was not substantively arbitrable. By its plain language, subsection (1)(E) applies when each of three conditions are met. *See* 14 M.R.S. § 5938(1)(E). On this record, the first of these conditions was not met because there was an arbitration agreement in section 11.01 of the OGG Operating Agreement and, by its terms, section 11.01 did not limit the scope of the arbitration to factual questions. Moreover, the express reservation of the right "to appeal questions of law arising at the hearing" implies that the parties intended to have the arbitration panel address matters of law. Consequently, subsection (1)(E) does not apply in this case.

9. *See Pugh's Lawn Landscape Co., Inc. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 260 (Tenn. 2010) (citing identical language in the state arbitration act to support limiting grounds for vacating arbitration awards to those listed in the statute); *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552, 560 (2001) (same); *Schnurmacher Holding, Inc. v. Noriega*, 542 So.2d 1327, 1328 (Fla.1989) (same).

10. Title 26 M.R.S. § 972 (2010) provides:

Either party may seek a review by the Superior Court of a binding determination by an arbitration panel. For interest arbitrations, the review must be sought in accordance with the Maine Rules of Civil Procedure, Rule 80B.

The binding determination of an arbitration panel or arbitrator, in the absence of fraud, upon all questions of fact shall be final. The court may, after consideration, affirm, reverse or modify any such binding determination or decision based upon an erroneous ruling or finding of law. An appeal may be taken to the law court as in any civil action.

Title 26 M.R.S. § 979–M (2010) provides:

1. Either party may seek a review by the Superior Court of a binding determination by an arbitration panel. Such review shall be sought in accordance with Rule 80B of the Maine Rules of Civil Procedure.

2. In the absence of fraud, the binding determination of an arbitration panel or arbitrator shall be final upon all questions of fact.

3. The court may, after consideration, affirm, reverse or modify any such binding determination or decision based upon an erroneous ruling or finding of law. An appeal may be taken to the law court as in any civil action.

[¶ 26] Furthermore, the MUAA expressly directs that it "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." 14 M.R.S. § 5947 (2010). Other states that have adopted the 1956 Uniform Arbitration Act interpret their statutes consistent with *Hall Street.*[11]

[¶ 27] Finally, the parties urge competing policy arguments to support their positions. Forsley contends that prohibiting parties from tailoring judicial review provisions of arbitration agreements will discourage private dispute resolution and increase the burden on trial courts. The Riverwalk Defendants contend that strict

---

11. *See* Unif. Arbitration Act (1956), 7 (Part 1A) U.L.A. 99 (2009) (providing table of jurisdictions adopting the 1956 Act; table also printed in volume 8, title 14 M.R.S.A. at 85–86 (2003)).

Many jurisdictions that have adopted the 1956 Uniform Arbitration Act have held that the grounds for vacatur provided in their respective acts are exclusive and may not be expanded by agreement. *See Pugh's Lawn Landscape Co.,* 320 S.W.3d at 259–60, 261 (applying the rationale of *Hall Street to* the Tennessee arbitration statute); *John T. Jones Constr. Co. v. City of Grand Forks,* 2003 ND 109, ¶ 15, 665 N.W.2d 698, 704 (holding that "parties to an arbitration agreement cannot contractually expand the scope of judicial review beyond that provided by [the Uniform Arbitration Act as adopted by North Dakota]"); *Chicago SouthShore & S. Bend R.R. v. N. Ind. Commuter Transp. Dist.,* 289 Ill. App.3d 533, 224 Ill.Dec. 595, 682 N.E.2d 156, 159 (1997), *rev'd on other grounds,* 184 Ill.2d 151, 234 Ill.Dec. 395, 703 N.E.2d 7 (1998) ("The subject matter jurisdiction of the trial court to review an arbitration award is limited and circumscribed by statute. The parties may not, by agreement or otherwise, expand that limited jurisdiction."); *Brucker v. McKinlay Transp., Inc.,* 454 Mich. 8, 557 N.W.2d 536, 540 (1997) (holding that an arbitration agreement that provides for judicial confirmation must conform to the statute because parties may not privately create a role for public institutions).

Other jurisdictions have held that the statutory grounds for vacatur are exclusive without specifically holding that the grounds may not be expanded by contract. *See Sch. Comm. of Pittsfield v. United Educators of Pittsfield,* 438 Mass. 753, 784 N.E.2d 11, 16 (2003) (stating that unless a statutorily enumerated ground for vacatur is established, courts are "strictly bound by the arbitrator's factual findings and conclusions of law, even if they are in error," and that "[a]rbitration would have little value it if were merely an intermediate step between a grievance and litigation in the courts"); *Callahan & Assocs. v. Orangefield Indep. Sch. Dist.,* 92 S.W.3d 841, 844 (Tex. 2002) ("The statutory grounds allowing a court to vacate, modify, or correct an award are limited to those the [Texas Arbitration] Act expressly identifies."); *Hart,* 42 S.W.3d at 560–61 (stating that the court's review of an arbitration award is limited to enumerated statutory grounds unless strong public policy is violated, and that awards will not be set aside for mistakes of law or fact); *Schnurmacher Holding,* 542 So.2d at 1329–30 (stating that the grounds for judicial review of an arbitration award are extremely limited by statute and do not include error of law).

However, California, which has not adopted the 1956 Uniform Act but attributes the origin of its arbitration act to the New York act, has not followed *Hall Street* based on prior case law which held that parties may expand the scope of judicial review by agreement. *See Cable Connection, Inc. v. DIRECTV, Inc.,* 44 Cal.4th 1334, 82 Cal.Rptr.3d 229, 190 P.3d 586, 589, 591 (2008).

The drafters of the Revised Uniform Arbitration Act (2000) deliberated on whether to expand judicial review of awards for errors of fact or law by including an "opt-in" provision in the section governing vacating awards. Unif. Arbitration Act (2000) § 23, cmt. B, 7 (Part 1A) U.L.A. 79. The Drafting Committee considered the negative aspects of expanded judicial review, such as allowing parties to relitigate issues on the merits and allowing parties to create subject matter jurisdiction in the courts. *Id.* at 79–81. Ultimately, the drafters elected not to include an opt-in provision because of these negative aspects and "uncertain case law," and they left the issue of expanded judicial review to be developed by case law connected to the state acts and the Federal Arbitration Act. *Id.* at 82–83; *see generally* 21 Richard A. Lord, *Williston on Contracts* §§ 57:129–130 at 629–39 (4th ed. 2001 & Supp.2010) (discussing contracts related to vacatur of arbitration awards).

adherence to the limited judicial review provided by the MUAA will foster the efficiency and finality of private dispute resolution. These policy arguments, however, are largely speculative. *See Hall Street,* 552 U.S. at 588–89, 128 S.Ct. 1396. The text of the statute reflects only one policy: when parties have agreed to arbitration that results in an award, the role of the court is to promptly confirm the award subject to narrow review upon application of a party. *See* 14 M.R.S. §§ 5937–5939 (2010). It would be contrary to that policy to permit parties, by contract, to craft a different role for the courts and thereby create new matters of disagreement for litigation.

■ [¶ 28] Consideration of the text, purpose, and policy associated with section 5938(1) inevitably lead us to conclude that section 5938(1) provides the exclusive grounds for a court to vacate an arbitration award and that the statute is not sufficiently elastic so as to allow parties to expand the court's role by agreement.

### 2. Judicial Estoppel

■ [¶ 29] Forsley argues that because the Riverwalk Defendants sought to compel arbitration pursuant to section 11.01 of the OGG Operating Agreement, they should be judicially estopped from denying the applicability of the reserved right to appeal an award on questions of law that was also contained in section 11.01.[12]

■ [¶ 30] Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and

then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quotation marks omitted). Although "there is no mechanical test for determining its applicability," for judicial estoppel to apply

> (1) the position asserted in the subsequent legal action must be clearly inconsistent with a previous position asserted; (2) the party in the previous action must have successfully convinced the court to accept the inconsistent position; and (3) the party must gain an unfair advantage as a result of their change of position in the subsequent action.

*Me. Educ. Ass'n v. Me. Cmty. College Sys. Bd. of Trs.,* 2007 ME 70, ¶¶ 17–18, 923 A.2d 914, 917–18 (quotation marks omitted).

[¶ 31] In its order granting the motion to compel arbitration in this case, the court did not consider whether the expanded judicial review provision of section 11.01 would apply. Because neither party addressed the judicial review provision until the Riverwalk Defendants moved to confirm the award, it cannot be said that the Riverwalk Defendants previously asserted a clearly inconsistent position. Nor did the court accept an inconsistent position resulting in an unfair advantage to the Riverwalk Defendants. *See id.* ¶ 18, 923 A.2d at 918. The court did not err in concluding that judicial estoppel did not apply in this case.

### 3. Severability of the Judicial Review Provision

■ [¶ 32] Forsley argues that the provision reserving the right to appeal

---

**12.** At first glance, our conclusion that the MUAA does not allow for judicial review of arbitration awards on questions of law appears to render Forsley's judicial estoppel argument moot. However, if we were to conclude that judicial estoppel applies in this case, we would next consider whether this

conclusion (1) supports a remand of this case to the trial court for it to reconsider its order to compel arbitration, and (2) affects our analysis of the severability clause of the contract. Accordingly, we give this argument our full consideration.

questions of law cannot be severed from the provision requiring arbitration because they are interdependent contractual exchanges of consideration. "The severability or entirety of a contract depends upon the intent of the contracting parties, and that intent is a question of fact that we review for clear error." *Carvel Co. v. Spencer Press, Inc.*, 1998 ME 74, ¶ 10, 708 A.2d 1033, 1035 (alteration omitted) (quotation marks omitted).

[¶ 33] Federal courts of appeals have reviewed as a matter of law whether an invalid provision of an arbitration agreement is severable, focusing on whether the invalid provision is central or collateral to the purpose of the agreement. For example, the Court of Appeals for the Ninth Circuit severed a provision for expanded judicial review of an arbitration award because no contract reformation was required, it "[did] not permeate any other portion of the arbitration clause, and the review provisions [were] not interdependent with any other." *Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.*, 341 F.3d 987, 1001–02 (9th Cir.2003); *see also Kristian v. Comcast Corp.*, 446 F.3d 25, 62–63 (1st Cir.2006) (concluding that a clause barring class arbitration that comprised a full paragraph in the agreement was a major provision, but severing it because the clause had a specific savings clause). In *Kyocera*, the court specifically rejected a party's argument against severance of a clause that provided for judicial review of an arbitration award based on the party's assertion that it "would never have agreed to arbitrate at all if expansive review were precluded." *See* 341 F.3d at 1000.

[¶ 34] In its order confirming the arbitration award, the court found, with respect to the parties' intent, that "[they] agreed to this severability clause, which is no way an unusual contractual term," and

it "perceive[d] no reason, based on the record before it, to invalidate the entire arbitration agreement."

[¶ 35] Reviewing the relevant portions of the OGG Operating Agreement, we note that the sections on arbitration (section 11.01) and severability (section 11.11) are both contained in Article XI of the agreement. Additionally, the section on severability applies to "any *provision* of this Operating Agreement," not "any section" or "any article." (Emphasis added.) Furthermore, the bulk of section 11.01 concerns the procedures for selecting arbitrators and for conducting the arbitration hearing; the provision regarding judicial review is a parenthetical within that section. For these reasons, the judicial review provision is not central to the purpose of the arbitration agreement, and it can be severed without reforming the contract. *Compare Kyocera*, 341 F.3d at 1001–02, *with City of Beaumont v. Int'l Ass'n of Firefighters, Local Union No. 399*, 241 S.W.3d 208, 215–16 (Tx.App.2007) (concluding that a provision in an arbitration clause that specified criteria to be applied in arbitration proceedings was not severable because the provision was central to the essential purpose of the agreement).

[¶ 36] The court did not err in its factual determination that the parties agreed to the severability clause or in its legal conclusion that the judicial review provision of the arbitration clause was severable.

B. Summary Judgment Challenges

1. Collateral Estoppel

[¶ 37] Forsley argues that the court erred in determining by summary judgment that he was collaterally estopped from arguing that (1) the Riverwalk Defendants repudiated the MOU; (2) the MOU did not modify the Garage P & S or the Garage Note, both of which remain

valid, binding, and enforceable; and (3) if the MOU did modify the Garage P & S, such modification constituted a breach and repudiation of the Garage Note. Forsley does not argue that he did not have an opportunity to litigate these issues in arbitration; he contends that the arbitration panel did not resolve these factual issues.

[¶ 38] We review the grant of a summary judgment de novo, viewing the summary judgment record in the light most favorable to the nonprevailing party to determine whether any genuine issue of material fact remains and whether the moving party is entitled to judgment as a matter of law. *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733, 738.

[¶ 39] "Collateral estoppel prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Id.* ¶ 17, 989 A.2d at 739–40 (quotation marks omitted). The doctrine of collateral estoppel also extends to judicially unconfirmed arbitration awards when the arbitrator's determination is sufficiently analogous to a final judgment. *Id.* ¶¶ 12–16, 989 A.2d at 738–39.

[¶ 40] According to the arbitration award, the MOU was binding on the parties, and Forsley, on behalf of himself, HL 1, and Shipyard Brewing, agreed to the terms of the MOU without condition. The arbitration award stated:

> We reject the argument that the failure to complete the documentation contemplated by the MOU demonstrates that the entire agreement has failed. The MOU is binding and enforceable in accordance with its terms. Mr. Forsley's repudiation of the MOU and his unwillingness to participate in negotiations while this present litigation is pending, accounts for the incomplete and unfinished state of the documents.
>
> .... Upon the entry of a final judgment, we assume that the parties will carry out the terms of the MOU.

Contrary to Forsley's assertion, the conclusion that the MOU was binding and enforceable was not conditioned upon the assumption that the parties would carry out the terms of the MOU. Furthermore, in reaching this conclusion, the arbitration panel necessarily considered and rejected the contention that the Riverwalk Defendants repudiated the MOU.

[¶ 41] By its terms, the MOU modified the Garage P & S by increasing the purchase price from $11 million to $12 million. The MOU also expressly modified the Garage Note: "If anything less than $12,000,000 in third party funds is paid to Seller for the purchase price proceeds, the amount otherwise payable to Shipyard Brewing Company on the first installment note [i.e., the Garage Note] shall be deferred until all such $12,000,000 purchase price proceeds are paid to Seller." In concluding that the MOU was binding and enforceable, the arbitration panel implicitly accepted that those terms modified the Garage P & S and the Garage Note.

[¶ 42] Because the arbitration panel determined that the MOU was binding and enforceable, it necessarily resolved factual issues concerning whether the Riverwalk Defendants repudiated the MOU and whether the MOU modified the Garage P & S and the Garage Note. Furthermore, the arbitration award was sufficiently analogous to a final judgment. *See Beal*, 2010 ME 20, ¶¶ 13–15, 989 A.2d at 738–39. Consequently, the court did not err in concluding that Forsley was collaterally estopped from relitigating these factual issues in this action.

2. Standing to Seek Judicial Dissolution

 [¶ 43] Forsley contends that Ocean Gateway Garage breached the Garage Note by refusing to sell the garage to Forsley for his $11 million offer, and by virtue of this breach, Shipyard Brewing is a creditor of Ocean Gateway Garage and thus has standing to seek its judicial dissolution and the appointment of a receiver pursuant to 31 M.R.S. §§ 702(2), 703(1).

[¶ 44] Maine's Limited Liability Company Act provides:

> The Superior Court of this State may decree the dissolution of, and liquidate the assets and business of, a limited liability company ... [i]n an action filed by a creditor of the [LLC] when it is established that the [LLC] is insolvent or that its debts exceed its assets.

31 M.R.S. § 702(2). Section 703 provides that the court may appoint a liquidating trustee in connection with its authority to wind up an LLC's affairs. 31 M.R.S. § 703(1).

[¶ 45] We have concluded that the MOU is binding and enforceable. Accordingly, pursuant to its terms, "the amount otherwise payable to Shipyard Brewing Company on the [Garage Note] shall be deferred until all such $12,000,000 purchase price proceeds are paid to Seller." The summary judgment record establishes that the garage has not been sold; therefore, no amounts were payable to Shipyard Brewing pursuant to the MOU, Shipyard Brewing is not a creditor of Ocean Gateway Garage, and it does not have standing to seek dissolution pursuant to section 702(2).

[¶ 46] The court did not err in granting summary judgment to the Riverwalk Defendants on Forsley's claims seeking judicial dissolution.

The entry is:

Judgment affirmed.