STATE OF MAINE
Cumberland, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-13-62,
*AMH - CUM - 3/20/2014*

)
JAMES STANLEY, JR., BARBARA )
STANLEY, and NORTHEAST )
MARINE SERVICES, INC., )
)
            Movants, )
)
v. )
)
MICHAEL A. LIBERTY, LIBERTY )
GROUP, INC., EQUITY BUILDERS, )
INC., LIBERTY MANAGEMENT, )
INC., AMERICAN HOUSING )
PRESERVATION CORP., and )
MAINLAND DEVELOPMENT CO., )
)
            Respondents )

## ORDER ON MOTION TO CONFIRM ARBITRATION AWARD AND MOTION TO VACATE, CORRECT, OR MODIFY ARBITRATION AWARD

James Stanley, Jr., Barbara Stanley, and Northeast Marine Services, Inc. (collectively, "Movants" or "the Stanley parties") move to confirm the arbitration award against Michael A. Liberty, Liberty Group, Inc., Equity Builders, Inc., Liberty Management Inc., American Housing Preservation Corp., and Mainland Development Co. (collectively, "Respondents" or "the Liberty parties") pursuant to 14 M.R.S. § 5937 (2013). The Liberty parties move to vacate the same award, pursuant to 14 M.R.S. § 5938 (2013), or correct or modify the award pursuant to 14 M.R.S. § 5939 (2013).

After oral argument on February 12, 2014, and a thorough review of the arbitrator's decision, the applicable law, and the parties' arguments, the court affirms the arbitration award in full.

1

*PROCEDURAL BACKGROUND*

In an agreement dated August 17, 2012, Mr. Stanley and Mr. Liberty agreed to resolve their numerous disputes through binding arbitration. (M. Confirm Exh. 1.) The parties appointed David Plimpton as their arbitrator. After discovery and a hearing, the arbitrator issued his decision on all claims, defenses, and counterclaims on July 22, 2013, awarding the Stanley parties over $2,000,000 in damages, including $1,836,499.20 for retirement payments. (Arbitration Award (M. Confirm Exh. 3 (hereinafter, "AA")).)

On July 31, 2013, the Stanley parties filed in Cumberland County Superior Court: a motion to confirm the arbitration award; an ex parte motion for attachment and attachment on trustee process; and a motion to temporarily seal the filings in this matter. The latter two motions were granted by the Superior Court (*Cole J.*) on August 1, 2013.[1]

Upon motion of the Liberty parties, the arbitrator modified the award on August 27, 2013, in order to correct a calculation error in the retirement payments and reducing the award on that claim to $1,778,495.08. (M. Vacate Exh. H.) After the arbitrator corrected the award, the Liberty parties then moved to vacate, correct, or modify the corrected award on October 21, 2013. The matter was approved for transfer to the Business and Consumer Court on November 27, 2013. Oral argument was conducted on February 12, 2014.

*STANDARD OF REVIEW*

The grounds upon which a court may vacate an arbitration award are narrow. The "exclusive grounds for a court to vacate an arbitration award" are those contained in section 5938(1). *HL 1, LLC v. Riverwalk, LLC*, 2011 ME 29, ¶28, 15 A.3d 725. The primary issue typically is whether the award exceeded the scope of the arbitrator's powers. *See Leete &*

---

[1] Two motions related to the attachment order are currently pending before the court: the Stanley parties' motion to set schedule for discovery and oral examination of certain trustees, and the Liberty parties' motion to dissolve the attachment. The court stayed action on these motions pending the outcome of the motion to confirm and motion to vacate the arbitration award.

2

*Lemieux, P.A. v. Horowitz*, 2012 ME 115, ¶12, 53 A.3d 1106. "When an arbitrator stays within the scope of his or her authority, the award will not be vacated even when there is an error of law or fact, unless the challenger demonstrates that the arbitration violated one of the grounds to vacate an award stated in 14 M.R.S. § 5938(1)." *Id.* "A reviewing court is not empowered to overturn an arbitration award merely because it believes that sound legal principles were not applied." *HL 1, LLC v. Riverwalk LLC*, 2011 ME 29, ¶19, 15 A.3d 725 (quotation marks omitted).

Similarly, the grounds upon which a court may modify or correct an award are also narrow. Modification is permitted pursuant to 14 M.R.S. § 5939, "but only in those cases when a modification is necessary to correct a formal or jurisdictional deficiency in the award and when the modification will not affect the merits of the controversy." *Me. State Emps. Ass'n Local 1989 v. State Dep't of Corr.*, 593 A.2d 650, 652 (Me. 1991); *accord, Anderson v. Elliott*, 555 A.2d 1042, 1047 (Me. 1989) (stating section 5939 is only available "to rectify a technical error or an 'evident miscalculation' or misdescription").

The grounds asserted by the Liberty parties to vacate the award are in subsections (C) and (D) of section 5938(1):

C. The arbitrators exceed their powers;

D. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provision of section 5931, as to prejudice substantially the rights of a party.

14 M.R.S. § 5938(1). The Liberty parties also assert that the award is subject to correction pursuant to section 5939, which requires the court to "modify or correct the award where . . . [t]here was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;" or "[t]he award is imperfect in a matter of form, not affecting the merits of the controversy." 14 M.R.S. § 5939(1)(A), (C). The Liberty

3

parties have the burden of proof to show the award should be vacated, modified, or corrected. *See NCO Portfolio Mgmt., Inc. v. Folsom*, 2007 ME 152, ¶4, 938 A.2d 24.

## DISCUSSION

The decision of the arbitrator spans 99 single-spaced pages and encompasses claims that are not at issue in the present proceedings. Because the parties included a confidentiality provision in their arbitration agreement, and because most of the arbitrator's decision is not in question, the court only recounts those portions of the factual background as necessary to address the parties' arguments and explain the court's reasoning.

I. The Liberty Parties' Claim for Breach of Fiduciary Duty against Mr. Stanley

Two of the claims submitted to the arbitrator by the Liberty parties against Mr. Stanley were for breach of the duty of loyalty and breach of the duty of care in Mr. Stanley's capacity as a fiduciary to the Liberty parties. (AA 80.) These claims relate to payments to Mr. Stanley from the Liberty parties' accounts between 2002 and 2011 that are unsubstantiated and undocumented as legitimate or authorized payments. The arbitrator found against the Liberty parties and in favor of Mr. Stanley on these claims, primarily because Respondents had failed to meet their burden of proof.

It is the burden to which the arbitrator held the Liberty parties that the Respondents object. More specifically, Respondents assert that the arbitrator misstated and misapplied the applicable burden of proof resulting in a manifest disregard of the law. According to Respondents, because Mr. Stanley 1) was responsible for maintaining accurate corporate records, 2) engaged in self-dealing transactions with the Liberty parties, and 3) did not keep accurate records of those transactions, all doubts from the remaining records should have been construed against Mr. Stanley and a presumption should arise that the Liberty parties' reconstruction of the accounts is valid. As stated in their brief, "It is inconceivable that a self-

4

dealing fiduciary, who failed to keep record of his self-dealing, should escape accountability for such self-dealing because he kept no adequate records." (M. Vacate 10.)

A.    *The arbitrator's analysis*

The parties agreed that Maine law would apply to their disputes.[2] Accordingly, the arbitrator applied the following framework from the Maine Business Corporations Act (the Act), 13-C M.R.S. §§ 101-1702 (2013), to the Liberty parties' breach of fiduciary duty claim. Because Mr. Stanley was an officer of Mr. Liberty's companies, the arbitrator first looked to the statute governing the conduct for officers, 13-C M.R.S. § 843, for the basic standard of conduct and the basis for potential liability:

> **1.    Basic standard of conduct.** An officer, when performing in the capacity of an officer, has the duty to act:
>
> A.    In good faith;
>
> B.    With the care that a person in a like position would reasonably exercise under similar circumstances; and
>
> C.    In a manner the officer reasonably believes to be in the best interests of the corporation.
>
> . . . .
>
> **3.    Basis for potential liability.** An officer is not liable to the corporation or its shareholders for any decision to take or not to take action, or any failure to take any action, as an officer if the duties of the office are performed in compliance with this section. Whether an officer who does not comply with this section has liability depends on applicable law, including those principles of section 832 that have relevance.

(AA 82.) Section 843 is essentially a codification of the business judgment rule, which insulates directors and officers "from a finding of liability [based on their] informed business decisions"

---

[2] The arbitration agreement does not indicate what law the arbitrator is to apply in deciding the issues. Instead, it states that the arbitration agreement itself "shall be interpreted in accordance with the laws of the State of Maine." (Mov.'s Reply Exh. 1 § 16.) Nevertheless, all of the corporate entities involved are all Maine corporations, the arbitrator clearly applied Maine law in the arbitration, the parties agreed that the Maine Uniform Arbitration Act governed their appeal rights, and no party contests application of Maine law on appeal.

5

unless the "allegedly harmful conduct was primarily motivated by fraud or bad faith." *Rosenthal v. Rosenthal*, 543 A.2d 348, 353 (Me. 1988).

Based on section 843(3), the arbitrator then turned to 13-C M.R.S. § 832, which governs the standards of liability for directors of a corporation. (AA 82-83.) Pursuant to section 832, the arbitrator stated that the Liberty parties had the burden of proving that 1) the defenses or safe harbors listed in § 832(1)(a) did not apply, 2) Mr. Stanley breached his fiduciary duty by engaging in conduct listed in § 832(1)(B), and 3) the harm suffered by the Liberty parties was proximately caused by Mr. Stanley pursuant to § 832(2)(A). (AA 83.) Finally, recognizing that these were conflicting-interest transactions (AA 83-84), the arbitrator stated that the Stanley parties had the burden of proving that the transactions were fair to the corporation as a whole:

> **2. Conflicting-interest transaction not actionable if standards met.** A director's conflicting-interest transaction may not be the subject of equitable relief or give rise to an award of damages or other sanctions against a director of the corporation, in a proceeding by a shareholder or by or in the right of the corporation, on the ground that the director has an interest regarding the transaction, if:
>
> . . . .
>
> C. The transaction, judged according to the circumstances at the relevant time, is established to have been fair to the corporation. For purposes of this paragraph, a transaction is fair to a corporation if, taken as a whole, the transaction was beneficial to the corporation, taking into appropriate account whether the transaction was:
>
> (1) Fair in terms of the director's dealings with the corporation; and
>
> (2) Comparable to what might have been obtained in an arms-length transaction, given the consideration paid or received by the corporation.

13-C M.R.S. § 872(2).

Based on this framework, the arbitrator concluded that the Liberty parties had not met their burden of showing Mr. Stanley breached a fiduciary duty. (AA 84.) The arbitrator also concluded that the Stanley parties satisfied their burden of showing that the conflicting-interest

6

transactions were fair, beneficial to the corporation, and in the best interest of the Liberty companies, and comparable to what might have been obtained in an arms-length transaction. (AA 84.) The arbitrator based his reasoning, in part, on inadequate accounting practices at the Liberty companies over the years and the inability of any party to fully reconstruct the books to establish damages to any degree of certainty. (AA 88.)

B.    *The Court's Analysis*

Respondents strenuously argue that it was Mr. Stanley that was to blame for the poor record keeping and that, because Mr. Stanley was a fiduciary, the reconstruction of the records by the Liberty companies should have been treated as valid on a *prima facie* basis, resolving all doubts against the fiduciary. Respondents assert this standard is incorporated into the Act by virtue the phrase "applicable law" in section 843(3): "Whether an officer who does not comply with this section has liability depends on *applicable law*, including those principles of section 832 that have relevance." 13-C M.R.S. § 843(3). The Respondents also cite a plethora cases from other jurisdictions for this proposition, succinctly stated by the Supreme Court of Wisconsin:

> A trustee is not handling his own funds but funds of others and he must always be able to make a full accounting of his stewardship. When a trustee's accounts are not clear and accurate, all presumptions are against him and the obscurities and doubts are to be taken adversely against him.

*Richards v. Barry (In re Trust Estate of Martin)*, 159 N.W.2d 660, 662 (1968). Respondents urged the arbitrator to apply this standard to the accounts of the Liberty companies, and further asserted that the "entire fairness" doctrine shifts the burden of proof to the Stanley parties to account for Mr. Stanley's actions and show that the transactions were fair to the corporation. The arbitrator rejected these arguments and concluded that the Act provided the appropriate framework under Maine law. (AA 33-40.)

In the court's view, the arbitrator correctly determined that the appropriate framework for analyzing the parties' dispute was the Act. Even if the court did not agree, however,

7

Respondents' arguments would fail because Respondents are essentially arguing errors of law. The court cannot overturn the decision of the arbitrator based on an error of law or the application of questionable legal principles. *See Leete & Lemieux, P.A.*, 2012 ME 115, ¶12, 53 A.3d 1106; *HL 1, LLC*, 2011 ME 29, ¶19, 15 A.3d 725.

Respondents suggest that these errors of law amount to a "manifest disregard of the law," a phrase the United States Supreme Court has described, without deciding, as both "an independent ground for review" of an arbitrator's decision and "as a judicial gloss on the enumerated grounds for vacatur set forth" in the federal Uniform Arbitration Act. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 (2010). The court views the standard as subsumed within 14 M.R.S. § 5938(1)(C), whether the arbitrator exceeded his power.[3] *See Anderson v. Banks*, 2011 WL 1100368, at *5 n.5 (Me. Super. Ct. Feb. 22, 2011).

The arbitrator's analysis and conclusions on this issue do not indicate manifest disregard of the law or any exceedance of authority, and the Respondents have not established a basis for vacating the decision.

II.     The Interpretation of the Retirement Letter

The Stanley parties asserted at arbitration that the Liberty parties (particularly, LGI) had breached a contract with Mr. Stanley for retirement benefits (the Retirement Letter). (AA 49.) In the Retirement Letter, dated October 31, 2003, LGI agreed to pay certain benefits upon Mr.

---

[3] The First Circuit has stated the "manifest disregard of the law" standard as requiring vacatur

> if the party opposing confirmation of an award can show that the award is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.

*Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d 68, 74 (1st Cir. 2008) (quotation marks omitted). The First Circuit has also explained "[a]n award is in manifest disregard of the law if either the award is contrary to the plain language of the contract, or it is clear from the record that the arbitrator recognized the applicable law, but ignored it." *Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc.*, 274 F.3d 34, 36 (1st Cir.2001) (quotation marks omitted).

Stanley's retirement, which letter the arbitrator concluded was a binding and enforceable contract.[4] (AA 54.) The Retirement Letter is short:

> This letter shall serve to confirm that Liberty Group, Inc. (the "Company") has agreed to compensate you (the "Employee") as follows upon your retirement from active employment with the Company:
>
> At any time after the date hereof, the Employee may elect to retire and shall provide written notice to the Company (the "Retirement Notice") as such which such Retirement Notice shall set forth the last day that Employee intends to work (which day shall be not less than ninety (90) days from the date that the Company receives the Retirement Notice) (the "Retirement Effective Date"). From and after the Retirement Effective Date the Company agrees to pay to the Employee, or, in the event of the Employee's death, the beneficiaries designated on **Exhibit A** attached hereto and made a part hereof (i) the total, aggregate sum of One Million Dollars ($1,000,000.00) payable over such period of time that the Employee and the Company may agree to but not less than five (5) years (the "Base Payment"); plus (ii) an amount equal to six percent (6%) of that portion of the Base Payment remaining due and owing payable at the end of each calendar year (the "Inflation Adjustment"). The Base Payment and the Inflation Adjustment are collectively hereinafter referred to as the "Retirement Payments." The employee may modify and/or amend Exhibit A at any time and from time to time.

(Resps.' Exh. E.) Mr. Stanley gave notice of his retirement on December 15, 2011, which pursuant to the Retirement Letter, became effective 90 days later. (AA 56.) Neither LGI nor Mr. Liberty made any payments pursuant to the Retirement Letter. (AA 56.) The Liberty companies terminated Mr. Stanley's employment on February 6, 2012. (AA 58.)

The arbitrator determined LGI breached the agreement by not making payments, which breach proximately caused damages in the amount of those payments which were then due, and set about determining the amount of the damages. (AA 56.) In determining the amount of damages, the arbitrator concluded that the Retirement Letter was ambiguous as to when the Inflation Adjustment began to accrue on the Base Payment, that is, whether the years before Mr. Stanley gave his retirement notice were included in the calculation. (AA 57.)

---

[4] Respondents do not challenge this conclusion.

Having found an ambiguity in the Retirement Letter, the arbitrator considered the parties' purpose in entering into the agreement, which purpose was to entice Mr. Stanley to continue working for the Liberty companies.[5] (AA 55, 57.) The arbitrator concluded that the Inflation Adjustment began accruing as of the date of the Retirement Letter. (AA 57.) The arbitrator reasoned that "[i]f the Inflation Adjustment did not start to accrue until after [Mr. Stanley] retired, there would have been no advantage to Mr. Stanley, from a retirement benefits perspective, not to retire immediately and start to draw his $1,000,000." (AA 57.)

"Whether a contract term is ambiguous is a question of law." *Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶26, 1 A.3d 416. "A contract is ambiguous if it is reasonably susceptible to more than one interpretation." *Madore v. Kennebec Heights Country Club*, 2007 ME 92, ¶7, 926 A.2d 1180. When a contract is ambiguous, a court or arbitrator may consider extrinsic evidence of the parties' intent to construe the agreement. *See Coastal Ventures*, 2010 ME 63, ¶ 27, 1 A.3d 416.

Generally, "[c]ourts do not review an arbitrator's ruling on questions of law." *Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶16, 834 A.2d 131. Respondents assert, however, that the arbitrator manifestly disregarded the plain language of the Retirement Letter, *see City of Westbrook v. Teamsters Local No. 48*, 578 A.2d 716, 721 (Me. 1990) (only where there is manifest disregard of the contract will [the court] disturb the award"), creating an ambiguity where one did not exist and then resolving it in favor of Mr. Stanley. Respondents argument is straightforward and based on the "plain language" of the agreement. First, no Base Payment is due until *after* Mr. Stanley noticed his retirement, thus establishing the "Retirement Effective Date." (M. Vacate 27-28.) Second, the "plain language states that no Inflation Adjustment

---

[5] The arbitrator also construed the agreement against LGI because LGI's counsel drafted the agreement. (AA 56.)

10

would be triggered until the end of a calendar year in which the Base Payment or some portion of it 'remain[ed] due and owing payable.'" (M. Vacate 27 (quoting Resps.' Exh. E).)

Respondents' argument is not without merit. Admittedly this court would not have necessarily found the Retirement Letter ambiguous in that respect. "But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." 14 M.R.S. § 5938(1). Moreover,

> [A]n arbitrator does not exceed his authority if the arbitrator's interpretation, even if erroneous, nevertheless was rationally derived from the agreement. [T]he arbitrator's interpretation of the agreement is entitled to a high degree of judicial deference, and the agreement must be broadly construed, with all doubts generally resolved in favor of the arbitrator's authority.

*Dep't of Corr. v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 93*, 2000 ME 51, ¶9, 747 A.2d 592 (quotation marks and citations omitted). Only when "all fair and reasonable minds would agree that the construction of the contract made by the arbitrator[ ] was not possible under a fair interpretation of the contract," may the court vacate the award. *Id.* ¶10 (quotation marks omitted).

Here, the arbitrator's legal analysis of the Retirement Letter followed the steps Maine law requires in interpreting a contract. If the arbitrator's analysis went wrong, it was when he decided that the contract was ambiguous as to when the Inflation Adjustment began to accrue on the Base Payment. Finding a contract ambiguous when in fact it is not ambiguous is, at most, an error of law. Because the arbitrator was applying the analytical steps required by Maine law and was interpreting the provisions of the contract, in no sense can the arbitrator be said to have acted in "manifest disregard" of the contract. Given his finding of an ambiguity, the arbitrator's subsequent interpretation of the Retirement Letter based on the parties' intent is not one that "all fair and reasonable minds would agree . . . was not possible under a fair interpretation of the contract." *Id.*

11

III.    The "Inequitable Result" Prong of Piercing the Corporate Veil and Disregarding the Corporate Form

Finally, Respondents assert that the arbitrator inappropriately added a new obligor to the Retirement Letter by disregarding the corporate form and concluding Mr. Liberty was personally liable to Mr. Stanley for the obligations of LGI.

Maine law requires the party seeking to pierce the corporate veil to show "(1) some manner of dominating, abusing, or misusing the corporate form; and (2) an unjust or inequitable result that would arise if the court recognized the separate corporate existence." *Johnson v. Exclusive Props. Unltd.*, 1998 ME 244, ¶ 6, 720 A.2d 568, *citing Bonnar-Vawter, Inc. v. Johnson*, 157 Me. 380, 387-88, 173 A.2d 141, 145-46 (1961); *Anderson v. Kennebec River Pulp & Paper Co.*, 433 A.2d 752, 756 (Me.1981).

Respondents do not contest the arbitrator's findings on the first element—that the Stanley parties showed misuse or abuse of the corporate form by one or more of the Liberty parties. (*See* AA 60-61) (containing exhaustive findings on abuse of the corporate form). However, Respondents challenge the arbitrator's conclusion as to the "unjust or inequitable result" element.

The Stanley parties sought to hold Mr. Liberty personally liable for the breach of the Retirement Letter by LGI. The arbitrator specifically found "that an unjust or inequitable result would occur if the arbitrator recognized only the separate corporate existence of LGI." (AA 61.) The arbitrator based the conclusion on findings made in Count I (breach of the Retirement Letter) and elsewhere in the decision, including that Mr. Liberty did not recognize any distinction between himself and his companies in management of Liberty's companies and the Stanley parties provided direct support to Mr. Liberty and all of his companies throughout his tenure as an employee. (AA 40-49.) Notwithstanding the respect for separate corporate

12

entities espoused by *Theberge v. Darbro, Inc.*, 684 A.2d 1298 (Me. 1996), these findings are not unsupported and the court cannot overturn the award on this basis.

*CONCLUSION*

Based on the foregoing analysis, the court therefore GRANTS the motion to confirm the arbitration award dated July 22, 2013, as amended August 27, 2013, of Movants James Stanley, Jr., Barbara Stanley, and Northeast Marine Services, Inc., and DENIES the motion to vacate, modify or correct the same award of Respondents Michael A. Liberty, Liberty Group, Inc., Equity Builders, Inc., Liberty Management Inc., American Housing Preservation Corp., and Mainland Development Co.

This Order does not constitute an appealable, final judgment. Counsel for the parties are requested to confer upon a form of judgment that implements the arbitration award, as amended, including the declaratory and injunctive relief awarded as well as the dollar award and award of pre-judgment and post-judgment interest. After that conference, the Movants shall file a Motion for Entry of Judgment, with a proposed form of judgment that the parties have agreed upon, or, if the parties do not agree, that the Movants seek to have entered. If there is a disagreement, the Respondents with their opposition to the Movants' motion shall submit the form of judgment, consistent with this Order, that the Respondents seek to have entered. The parties' cooperation in the foregoing process shall not be deemed a waiver of any party's right to object to this Order and appeal from any resulting judgment.

Pursuant to M.R. Civ. P. 79, the clerk is hereby directed to incorporate this order into the docket by reference.

Dated March 20, 2014

_____
A. M. Horton
Justice, Business and Consumer Court

James Stanley, Jr., Barbara Stanley, and Northeast Marine Services, Inc., v. Michael A. Liberty, Liberty Group, Inc., Equity Builders, Inc., Liberty Management, Inc., American Housing Preservation Corp., and Mainland Development Co.
BCD-CV-13-62

James Stanley, Jr., Barbara Stanley, Northeast Marine Services, Inc.,

### Petitioners / Plaintiffs

Counsel:                          George Royle, Esq.
                                  Michael Buescher, Esq.
                                  George Dillworth, Esq.
                                  84 Marginal Way
                                  Suite 600
                                  Portland, ME 04101

Michael Liberty, Liberty Group, Inc., Equity Builders, Inc., Liberty Management, Inc., American Housing Preservation Corp., and Mainland Development Co. Development Co.

### Respondents / Defendants

Counsel:                          George Marcus, Esq.
                                  Daniel Rosenthal, Esq.
                                  Andrew Helman, Esq.
                                  One Canal Plaza
                                  Suite 600
                                  Portland, ME 04101